## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## THOMAS RANDAL MARTINE,
*Defendant-Appellant.*

Tillamook County Circuit Court
131009; A155840

371 P3d 510

Andy Simrin argued the cause for appellant. With him on the brief was Andy Simrin PC.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Egan, Presiding Judge, and Hadlock, Chief Judge, and Haselton, Senior Judge.

HASELTON, S. J.

**HASELTON, S. J.**

Defendant, who was convicted, following a jury trial, of one count of tampering with physical evidence, ORS 162.295, and one count of hindering prosecution, ORS 162.325, appeals, assigning error to the denial of his motion for judgments of acquittal (MJOA) as to each of those charges. Specifically, he contends, *inter alia,* that the state failed to adduce legally sufficient proof that the object he destroyed, an electronic device, was "physical evidence" for purposes of those offenses. As explained below, we conclude that the state's proof of "physical evidence" was legally insufficient in that the jury could not find, without impermissible speculation, that the electronic device that defendant destroyed had any colorable connection to a pending or immediately impending official proceeding; consequently, the trial court erred in denying defendant's MJOA. However, we further conclude that, as suggested by the state, the jury necessarily found that defendant had engaged in conduct constituting attempted tampering with physical evidence and attempted hindering prosecution. Accordingly, we reverse defendant's convictions for tampering with physical evidence and hindering prosecution but remand for the trial court to enter judgments of conviction for attempted tampering with physical evidence and attempted hindering prosecution, and for resentencing.

In reviewing the denial of an MJOA, we view the evidence and reasonably derived inferences in the light most favorable to the state. *State v. Lupoli,* 348 Or 346, 366, 234 P3d 117 (2010). Consistently with that standard, the record discloses the following material facts.

Defendant was acquainted, and on friendly terms, with Benjamin Clark, who was a police officer for the city of Rockaway Beach and the varsity girls' softball coach at Neah-Kah-Nie High School. In early 2011, Clark exchanged a number of text messages with a member of the softball team, who was 14 years old; the girl also sent Clark one or more photographs of herself. The content of at least some of the text messages and of the photo(s) was apparently potentially compromising. Clark received those transmissions on his personal iPhone and also retained the photo(s) on his iPad, and the girl transmitted at least the photo(s) on her iPod.

On May 14, 2011, Clark received a message from his wife informing him that she had "found the child porn" and that he needed to "get rid of it." Clark then caused an assistant coach to obtain the girl's iPod and deliver it to him. According to Clark, he proceeded, with his wife, to destroy all three devices (that is, his iPhone and iPad and the girl's iPod) by driving his vehicle over them at a location roughly one-quarter mile from the beach north of Neskowin, near the southern border of Tillamook County. Also according to Clark, he and his wife then scattered the broken and crushed pieces of the three devices in "the brush" there, as well as at a second location near a county road.[1]

In August 2011, Clark was charged by indictment with using a child in a display of sexually explicit conduct, ORS 163.370, second-degree encouraging child sexual abuse, ORS 163.387, and various other crimes relating to his alleged destruction of the electronic devices. That prosecution was the object of considerable local interest and media coverage. Among the reports was an article in the September 1, 2011, Tillamook *Headlight Herald,* in which defendant was quoted as commenting favorably on Clark's public service and stating that he hoped that the charges against Clark were the result of a "misunderstanding." The same article, which defendant read, referred to Clark's purported destruction of the girl's iPod. Other media reports referred to suppositions that Clark had disposed of the electronic devices by throwing them into the ocean, perhaps near Wheeler, which is four to five miles north of Rockaway Beach, and there was communal "gossip" and "rumor" to that effect. Ultimately, on March 26, 2012, Clark pleaded guilty to one count of hindering prosecution and one count of tampering with physical evidence.[2]

---

[1] As amplified below, Clark's testimony was the only substantive evidence before the jury as to the location and circumstances of the destruction of the three devices, including, specifically, the girl's iPod, which is the focus of this case. *See* 277 Or App at 379-80. To be sure, the jury was not obligated to credit Clark's account, which could be viewed as crafted to assist defendant, but, with that evidence excluded, the record is otherwise silent as to when, where, and how the girl's iPod was destroyed—if, indeed, it was ever destroyed.

[2] Although the judgment of conviction in Clark's case was offered and admitted as evidence in this case, the transcript(s) (if any) of the plea and sentencing proceedings were not. Neither that judgment nor any other evidence in this record

The circumstances specifically material to defendant's prosecution and conviction occurred after Clark was indicted and before Clark entered his guilty plea. Sometime in the late summer or early fall of 2011,[3] defendant, who performed maintenance duties at the Seaview Condominiums in Rockaway Beach, found an intact electronic device on the beach near the condominiums. The device was enclosed by a zippered case and was similar in appearance to both an Apple iPhone and an Apple iPod of the sort that the girl in the then-pending Clark prosecution had possessed, which the police were attempting to find.[4]

Defendant showed the device to three coworkers, who provided housekeeping services at the condominiums. Because they were all aware—as was defendant—that the police were attempting to locate electronic devices in the Clark prosecution, at least two of the coworkers explicitly and repeatedly told him that he should turn the device over to the police.[5] Defendant did not do so.

Instead, according to defendant—when he was asked by one of the coworkers a couple of weeks later—he took the device home and dried it out and cleaned it in an effort to make it operable, and, when that proved unavailing, he threw it out with the trash. During the course of that conversation with his coworkers, defendant referred, without elaboration, to having "talked to [Clark]."

In response to a tip, a Tillamook County detective interviewed defendant's coworkers and then contacted defendant, who acknowledged finding the device and discarding it, reiterating his purported efforts to render it operable. Defendant also acknowledged that he and Clark were friends, that he telephoned Clark "about his morale" but not about "the investigation," and that he had generally

---

indicates which electronic device(s) was, or were, the subject(s) of the charges to which Clark pleaded.

[3] Prosecution witnesses' accounts varied between "late summer" and early November.

[4] There was no evidence that there was anything uniquely distinctive about the girl's iPod, visually or otherwise, relative to other devices of the same type.

[5] The Rockaway Beach police station was located "right across the highway [U.S. Highway 101]" from the condominiums.

heard that (in the detective's words) "one of the phones was thrown in the ocean in the Wheeler, Oregon area." However, according to defendant, he had not turned the device over to law enforcement because it was "a little music thing" without any resemblance to a "phone." Defendant twice explicitly denied that his coworkers had ever urged him to take the device to the police. After having been interviewed by the detective, defendant, who had previously been friendly with his coworkers, aggressively and angrily confronted one of the housekeepers about having spoken with police about the matter.

In January 2013, defendant was indicted on one count of hindering prosecution, ORS 162.325, and one count of tampering with physical evidence, ORS 162.295.[6] Specifically, with respect to the hindering charge, the indictment alleged that defendant had hindered the prosecution of Clark, "a person who had committed Using a Child in a Display of Sexually Explicit Conduct [a felony]" by "an act of * * * destruction of [an] electronic device." The tampering allegation was generic, *viz.*, that defendant had "unlawfully and knowingly destroy[ed] * * * physical evidence, thus impairing its availability, with the intent that it be unavailable in an official proceeding which [to defendant's knowledge] was about to be instituted."[7] Although the indictment did not specify the "electronic device" or "physical evidence" at issue, the state proceeded at trial solely by reference to the teenage girl's iPod, and not to Clark's iPhone or iPad.

At trial, in opening statement, the prosecutor acknowledged that the object that defendant had found on the beach "was probably not the item that was thrown

---

[6] The pertinent text of the statutes is set out below. 277 Or App at 367.

[7] The "about to be instituted" language is, at least, curious, given that the indictment alleged that defendant's culpable conduct occurred sometime between "September 1, 2011 and December 31, 2011," and that, as noted, Clark was indicted in August 2011, including on the charge of using a child in a display of sexually explicit conduct that was referenced in the hindering prosecution charge. However, nothing in the record clarifies or explains that apparent incongruity, which was not addressed at trial. *Cf. State v. Jacobs*, 276 Or App 453, 369 P3d 82 (2016) (addressing the sufficiency of proof of the defendant's reasonably inferred knowledge that, in the totality of the circumstances at the time that he swallowed drugs in his possession, the defendant acted with an awareness that official proceedings were "about to be instituted" within meaning of ORS 162.295(1)(a)).

in the water by Mr. Clark in 2011." The state maintained, nevertheless, that whether the item that defendant found and destroyed was actually the girl's iPod was largely, and perhaps entirely, immaterial, given that defendant had disposed of the item, a physical object, with the intent of impeding and frustrating successful prosecution of charges against Clark.

In moving for judgments of acquittal as to both charges, defendant challenged the legal sufficiency of the state's proof that the object that he had found and disposed of was *"physical evidence"* (emphasis added) for purposes of ORS 162.295(1)(a) or *"physical evidence that might aid"* (emphasis added) for purposes of ORS 162.325(1)(e). Specifically, defense counsel argued:

"Now, I realize the standard is in the light most favorable to the state, but under those circumstances, how is it that a reasonable juror could look at this and discern that this might in fact be the device[?]

"* * * * *

"* * * There's been no showing that this could even reasonably be physical evidence. There's just too much distance, too much time under the circumstances, and everybody's description of this particular device means that it couldn't possibly have been involved in this particular case as described by [the prosecutor]."

The court denied that motion, and the jury found defendant guilty of both charges.

On appeal, defendant renews his "physical evidence" challenge.[8] That challenge implicates two successive inquiries.

---

[8] In addition, defendant raises an unpreserved challenge with respect to the sufficiency of the state's proof of hindering prosecution, as that crime was charged here. Specifically, defendant contends for the first time that no jury could reasonably find that the object that he destroyed could have "aid[ed] in the *discovery or apprehension*" of Clark, ORS 162.325(1)(e) (emphasis added), because at the time of defendant's conduct, Clark had *already* been "apprehended" and his whereabouts were obviously well known. To the extent, if any, that our analysis and disposition may not obviate consideration of that contention, we decline to review it as failing to satisfy the third conjunctive requirement for "plain error" review. As the state's responding brief evinces, defendant's contention is not "obvious"; that is, it is not beyond reasonable dispute. *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

*First*, as a matter of statutory construction, what is the meaning of "physical evidence," as defined at ORS 162.225(3) and employed in ORS 162.295(1)(a) and ORS 162.325(1)(e)? *Second*, in the circumstances here, was the state's proof of that element (including with the additional "which might aid in" qualification of ORS 162.325(1)(e)) legally sufficient?

For the reasons that follow, we conclude that to constitute "physical evidence" in this context, an item of physical substance must have at least some plausible, nonspeculative relationship to the determination of a matter of fact in a pending or immediately impending official proceeding. We further conclude that the state's proof was legally insufficient to permit the jury to find such a nonspeculative nexus between the electronic device that defendant destroyed and the Clark prosecution.

ORS 162.295(1), as pertinent here, provides:

"A person commits the crime of tampering with physical evidence if, with intent that it be used, introduced, rejected or unavailable in an official proceeding which is then pending or to the knowledge of such person is about to be instituted, the person:

"(a)   Destroys, mutilates, alters, conceals or removes *physical evidence* impairing its verity or availability[.]"

(Emphasis added.)

ORS 162.325(1) provides, as relevant:

"(1)   A person commits the crime of hindering prosecution if, with intent to hinder the apprehension, prosecution, conviction or punishment of a person who has committed a crime punishable as a felony, * * * the person:

"* * * * *

"(e)   Suppresses by any act of concealment, alteration or destruction *physical evidence* which might aid in the discovery or apprehension of such person[.]"

(Emphasis added.)

Finally, ORS 162.225(3) provides that, for purposes of ORS 162.295 and ORS 162.325, "'[p]hysical evidence'"

means "any article, object, record, document or other evidence of physical substance."

All three statutes were enacted in their present form as part of the 1971 omnibus revisions to the Oregon Criminal Code. Or Laws 1971, ch 743, §§ 197, 204, 207.

Here, defendant does not contest the sufficiency of the state's proof as to the requisite *mens rea* under the tampering and hindering statutes.[9] Rather, defendant focuses solely on the purported insufficiency of proof of the requisite *actus reus, viz.*, that no reasonable jury could find beyond a reasonable doubt that "the object actually was 'physical evidence' related to Clark's case" and, hence, that defendant had either "destroy[ed] *** physical evidence impairing its verity or availability" in a pending or impending proceeding, ORS 162.295(1)(a), or "suppress[ed] by [an] act *** of destruction physical evidence which might [have] aid[ed]" in Clark's apprehension, ORS 162.325(1)(e). As we understand it, defendant does not contend that the state was required to establish that the destroyed object was, in fact, the girl's iPod. Rather, defendant asserts, the state was required to adduce *prima facie* proof that the object, even if not actually the missing iPod, "had anything to do with the Clark case"—and failed to do so.

Conversely, with respect to the tampering statute, the state appears to advance two alternative formulations. First, as we understand it, the state asserts, or at least suggests, that the destruction of *any* physical object—regardless of whether it has, or even reasonably might have, any connection to a pending or impending prosecution—is culpable so long as the defendant acts with the requisite *mens rea*. Thus, for example, if a person saw a vial of sugar, erroneously believing that it contained drugs relating to a criminal proceeding and destroyed the vial and its contents with the intent of impairing that prosecution, the

---

[9] Nor could defendant do so plausibly, given the combination of his reasonably inferable awareness that the police were looking for the teenage girl's iPod in connection with the Clark prosecution, his relationship with Clark, and his patent disregard of his coworkers' advice that he should take the device that he had found to the Rockaway Beach police station, which was located nearby.

person would be guilty of tampering with physical evidence. Second, the state contends that, even if the item must have some nexus to a pending or impending proceeding, at most that requires only that the item *"might* have been evidence" in that proceeding—and that the electronic device here, given its appearance and location, satisfied that standard.[10] (Emphasis in original.) Finally, with respect to the sufficiency of evidence of hindering prosecution, the state contends that the evidence was sufficient, for the same reasons, to substantiate the "might [have] aid[ed]" qualification of ORS 162.325(1)(e).

We return to the baseline inquiry: What is the meaning of "physical evidence" for purposes of ORS 162.295(1)(a) and ORS 162.325(1)(e)? In exploring and resolving that question, we adhere to the methodology prescribed in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The legislature's intent is our lodestar. In discerning that intent, we begin by examining the text of the statute in context and then consider any pertinent legislative history. *Id.*

At first blush, it might appear that the inquiry is tautological (or virtually so): After all, "physical evidence" is expressly defined in ORS 162.225(3). However, as will become immediately apparent, that statutory definition may itself partake of tautology.

Again, ORS 162.225(3) defines "physical evidence," as used in ORS 162.295(1)(a) and ORS 162.325(1)(e), to mean "any article, object, record, document, or **other** *evidence* of physical substance." (Boldface and italics added.) As a matter of syntactic function, the emphasized term, by virtue of "other," qualifies the preceding term—that is, that to constitute "physical evidence," those items must be *"evidence."* Otherwise, it would seem, the use of "evidence"— as opposed to some more generic catch-all, such as "other thing" or "other item"—would be gratuitous.

---

[10] The state also contends that, even if it was obligated to adduce *prima facie* proof that the electronic device that defendant destroyed actually was the girl's iPod—a construction that the state most assuredly does not espouse—the same circumstantial evidence was sufficient to satisfy that more demanding standard.

But what is "evidence"? Because that term is not statutorily defined for these purposes, we proceed to its "plain" meaning in common usage or, if appropriate, its meaning in legal usage as a term of art. *See generally Ogle v. Nooth*, 355 Or 570, 578, 330 P3d 572 (2014) (noting that while, ordinarily, the court is to "give words of common usage their plain, ordinary meaning," "when words are used in the context of a legal proceeding * * * [,] they may be used as legal terms of art, and, if so, [the court is to] give precedence to their legal meanings").

"Evidence," in common usage, means:

"something that furnishes or tends to furnish proof : means of making proof : medium of proof * * * *specif* : something legally submitted to a competent tribunal as a means of ascertaining the truth of any alleged matter of fact under investigation before it."

*Webster's Third New Int'l Dictionary* 788 (unabridged ed 2002).

As a legal term of art, "evidence" is defined as follows:

"Any species of proof, or probative matter, legally presented at the trial of an issue, by the act of the parties and through the medium of witnesses, records, documents, concrete objects, etc., for the purpose of inducing belief in the minds of the court or jury as to their contention."

*Black's Law Dictionary* 656 (4th rev ed 1968).[11]

Thus, it would appear that, as a legal term of art, the statute's use of "evidence" would preclude the first of the state's two alternative formulations, *viz.*, that alteration or destruction of *any* object, when coupled with the requisite *mens rea*, is culpable "tampering" even if the item has no colorable connection to a pending or immediately impending official proceeding. Rather, given the use of "evidence," it would seem that the object must have at least some arguable probative value in such a proceeding.

---

[11] *Accord Ogle*, 355 Or at 583-84 (referring to definitions from contemporaneous editions of *Webster's* and *Black's* in considering meaning of "evidence" in ORS 138.580, as enacted in 1959).

Still, such a construction, while certainly reasonable, is not conclusive. Some common usages of "evidence" are broader than various legal usages, and, even though the statutes at issue here pertain to "the context of a legal proceeding," *Ogle*, 355 Or at 578, we do not understand *Ogle*'s precept with respect to deference to legal usage to be categorical if there is compelling evidence of contrary legislative intent.

And thus, the plot of statutory construction thickens. The history of the crafting and enactment of the operative statute—specifically including the definition of "physical evidence"—is, in parts, internally inconsistent and ultimately enigmatic. That history begins with the first preliminary draft of the omnibus revisions of the Oregon Criminal Code that were enacted in 1971. As noted, those revisions, in their final form, included all of the pertinent text of ORS 162.225(3), ORS 162.295(1)(a), and ORS 162.325(1)(e). Article 24 of the Criminal Law Revision Commission's First Preliminary Draft (June 1969) related to offenses involving obstruction of governmental administration (corresponding to the present ORS 162.225 to 162.375), and section 1 of that article (corresponding to the present ORS 162.225) set out applicable definitions. Among those originally proposed definitions was subsection 1(5), which provided:

> "'Physical evidence' means any article, object, document, record, or other *thing* of physical substance."

First Preliminary Draft at 1 (emphasis added).

The "summary" of the accompanying proposed commentary to that definition was unenlightening: "Subsection (5) as it relates to tampering with physical evidence is self-explanatory." First Preliminary Draft at 2. The commentary further identified the "[d]erivation" of that definition as being from "Michigan Revised Criminal Code section 5045(2)." *Id.* at 3.[12]

---

[12] Unlike Oregon, which collected operative definitions in a separate statute, Michigan included the definition of "physical evidence" within the same statute that described the crime of tampering with physical evidence. The originally proposed Oregon definition was taken essentially *verbatim* from the Michigan statute. *See* First Preliminary Draft at 4 (reproducing Michigan statute).

The First Preliminary Draft also included Article 24, section 8(1), which provided:

> "A person commits the crime of tampering with physical evidence if, with intent that it be used, introduced or suppressed in a pending or prospective official proceeding, he:
>
> "(1) Destroys, mutilates, alters, conceals or removes physical evidence impairing its verity or availability[.]"

First Preliminary Draft at 38.[13] Three aspects of the commentary to that original section 8 are noteworthy. First, that commentary instructs that, as a matter of overarching purpose, section 8 was intended to supplement other "protection[s] against the intentional subversion" of official proceedings by "extend[ing] that coverage to material that is intended to be introduced as evidence" in such proceedings. *Id.* Second, by way of definitional cross-reference, the draft commentary stated that "[p]hysical evidence is defined in section 1(5) * * * to mean *anything of physical substance*." *Id.* (emphasis added). Finally, with respect to application,

> "[t]he section does not require either that the physical evidence be admissible *or that it be material*. This is consistent with the code's overall rejection of the defense of impossibility to criminal liability."

*Id.* at 39 (emphasis added).

On October 9, 1969, a subcommittee of the Criminal Law Revision Commission addressed the First Preliminary Draft—and it was in the wake of that discussion that "or other *evidence* of physical substance" was substituted for "or other *thing* of physical substance." (Emphasis added.) A review of both the written minutes and the tape recording of that session discloses that, after a discussion of the definitions in section 1, which did not focus on "physical evidence," the subcommittee proceeded to a much more extended consideration of the proposed substantive offense provisions, including those relating to tampering with a witness (section 7) and tampering with physical

---

[13] That text substantially varied from the ultimately-enacted and still-extant text in that it employed "suppressed" (instead of "rejected or unavailable") and "in a pending or prospective official proceeding" (instead of "in an official proceeding that is pending or *to the knowledge of such person is about to be instituted*" (emphasis added)).

evidence (section 8). *See* Minutes, Criminal Law Revision Commission, Subcommittee No. 1, Oct 9, 1969, 6-7, 10-14 (Subcommittee Minutes); Tape Recording, Criminal Law Revision Commission, Subcommittee No. 1, Oct 9, 1969, Tape 82, Side 2 (Subcommittee Tape 82, Side 2). Various subcommittee members expressed concern that, given the proposed definition of "testimony" in section 1(4) as including not only statements but also documents *"or any other evidence"* that might be offered,[14] aspects of the witness tampering statute might overlap with aspects of tampering with physical evidence.[15] (Emphasis added.) Whatever the validity of those concerns, one of the members of the subcommittee proposed, and the chairperson directed, that the definition of "testimony" be narrowed by deleting the term "documents or other evidence":

> "and then let 'documents and so forth' *go into* '"physical evidence" means any article, object, document, or *other thing* of physical substance.'"

Subcommittee Tape 82, Side 2 (comments of Bruce Spaulding) (emphasis added).

Thus, nothing in the subcommittee's consideration and resolution of concerns about potential circumstantial overlap with the witness tampering statute anticipated, much less directed, the *deletion* of the extant "or other thing" text, substituting "or other evidence" in its place. Rather, "documents or other evidence" was to *supplement* the existing language.[16]

---

[14] Section 1(4) of the First Preliminary Draft defined "testimony" as "oral or written statements, documents or any other evidence that may be offered by a witness or party in an official proceeding."

[15] Specifically, some subcommittee members believed, and were concerned that, given the breadth of the definition of "testimony" by virtue of the "or other evidence" language, a person could be liable both for witness tampering under section 7(2)'s prohibition pertaining to "[o]ffering false testimony" and for evidence tampering under section 8(2)'s prohibition pertaining to "mak[ing], produc[ing] or offer[ing] any false physical evidence." *See* Subcommittee Minutes at 12-13; Subcommittee Tape 82, Side 2.

[16] The subcommittee minutes are vague on that score:

"It was [Mr. Spaulding's] suggestion that the definition of 'testimony' in subsection (4) of section 1 would mean 'oral or written statements that may be offered in an official proceeding,' that 'or party' be deleted after the word

Nevertheless, however unaccountably, that change occurred. Article 24, section 1(5) of the Comission's "Second Preliminary Draft" (Dec 1969) included, for the first time, the ultimately enacted definition of "physical evidence" as "any article, object, record, document or *other evidence* of physical substance." *Id.* at 2 (emphasis added). That definition appears to be unique, departing from the "or other thing" (or some closely approximate) formulation that Michigan originally adopted and a considerable number of other jurisdictions have adopted.[17] Further, it appears likely that other jurisdictions consciously avoided an "or other evidence" formulation as problematic. For example, the commentary to the Model Penal Code's tampering provision, section 241.7, which employs the generic "thing,"[18] notes that "[a]voidance of the word 'evidence' indicates that liability for tampering does not depend on the admissibility at trial of the document or object involved." *Model Penal Code and Commentaries Part II* (American Law Institute 1980), Commentary to Section 241.7 at 179. That commentary further observes:

> "The question of admissibility is too elusive to serve as a determinant for tampering. * * * More importantly, evidence not admissible at trial may play a helpful and perfectly legitimate role in an investigation."

*Id.* at 179-80.

---

'witness,' and 'documents or other evidence' *be included in* the definition of 'physical evidence' in subsection (5) of that section."

Subcommittee Minutes at 13 (emphasis added). However, the content of the recording is explicit.

[17] Among those jurisdictions are Alabama (Ala Code § 13A-10-129(b)), Alaska (Alaska Stat § 11.56.900(4)), Arizona (Ariz Rev Stat § 13-2801(3)), Arkansas (Ark Code Ann § 5-53-111(a)(1)), Connecticut (Conn Gen State Ann § 53a-146(8)), District of Columbia (DC Code § 22-723(a)), Hawaii (Haw Rev Stat § 710-1076(2)), Kentucky (Ky Rev Stat Ann § 524.010(6)), Montana (Mont Code Ann § 45-7-207(1)(a)), Nebraska (Nev Rev Stat § 28-922(2)), New Jersey (NJ State Ann § 2C:28-6(1)), New York (NY Penal § 215.35(1)), Pennsylvania (18 Pa Cons Stat § 4910(1)), Texas (Tex Penal Code § 37.09(a)(1)), and Washington (Wash Rev Code § 9A.72.150(2)). As noted, no other jurisdiction appears to have adopted Oregon's "or other evidence" construct.

[18] That provision, entitled "Tampering with or Fabricating Physical Evidence," states that a person is culpable for tampering

> "if, believing that an official proceeding or investigation is pending or about to be instituted, he:
>
> > "(1) alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding or investigation."

At least one other aspect of the sleight-of-hand sub-stitution of "other evidence" for "other thing" in the Second Preliminary Draft was, and is, also potentially problem-atic. Notwithstanding that change, with only one exception, the commentary pertaining to "physical evidence" and its application with respect to the tampering statute remained unchanged. The one exception was that the statement in the summary of section 1 in the First Preliminary Draft that "physical evidence" was "self-explanatory," *see* 277 Or App at 371, was deleted; in its place, the following was sub-stituted: "Physical evidence is defined to mean anything of physical substance *that may be introduced in an official pro-ceeding.*" Second Preliminary Draft at 3 (emphasis added). Notwithstanding that change, however, the definitional cross-reference in the commentary to section 8 continued to state without qualification, that, as defined in section 1, "physical evidence" means "anything of physical sub-stance"—without any reference to the putative introduction in an official proceeding. *Id.* at 40. Further, the commen-tary to section 8 retained the categorical disclaimer that "physical evidence" need not be either "admissible" or "mate-rial." *Id.* at 41.[19] That commentary remained—and, indeed, remains—in the official commentary to the 1971 revisions as enacted. *See* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 197, 198, 203, 204 (July 1970).

One final event bears on our examination of stat-utory pathology. On January 23, 1970, the full Criminal Law Revision Commission met to consider the Second Preliminary Draft. Although there was no pertinent discus-sion of the definition of "physical evidence" (including the "or

---

[19] To be sure, so long as "physical evidence" was defined so broadly and gener-ically as to include "any other *thing* of physical substance," that commentary was unexceptional, as tracking the Model Penal Code's rationale for forswearing reference to "evidence" as expressed in the commentary quoted above. *See* 277 Or App at 374. But once "other evidence" was substituted for "other thing," that aspect of the commentary, if not necessarily inapposite, at least warranted some explanation. The existential question of "How or when can 'evidence' that is not *material* be *evidence*?" is not acknowledged, much less answered. *See Black's* at 1128 (defining "material evidence" as that which "is relevant and goes to the sub-stantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case").

other evidence" language) in section 1, commission members did engage in a substantial discussion relating to the purpose, scope, and application of the proposed tampering statute itself. *See* Minutes, Criminal Law Revision Commission, Jan 23, 1970, 18-19 (Commission Minutes); Tape Recording, Criminal Law Revision Commission, Jan 23, 1970, Tape 46, Side 1 (Commission Tape 46, Side 1). During that discussion, commission members expressed varying, and perhaps inconsistent, views which, at least implicitly, relate to the construction of "physical evidence." Specifically, one commission member asserted that the fundamental purpose of section 8 was to ensure the "integrity" of official proceedings:

> "What we are trying to do is to preserve the integrity of official proceedings and to make sure that *everything that's necessary to determine the facts of the truth of the matter* is available to the court or the body that's supposed to be deciding it * * * [that is,] *everything that weighs on the matter or has anything to do with it.*"

Commission Tape 46, Side 1 (remarks of Robert Chandler) (emphasis added); *see also* Commission Minutes at 18.

Commission chairman, Senator Anthony Yturri, then posited, with respect to scope and application, that the predicate "physical evidence" "should be *something that really is material to the pending proceeding.*" *Id.* (emphasis added). Senator Yturri then asked commission member Judge James Burns if he believed that the proposed language made it clear that the tampering prohibition pertained only to "physical evidence" "that was really material." Commission Tape 46, Side 1; *see also* Commission Minutes at 19. Judge Burns, without reference to the draft commentary (which, as noted, explicitly disavowed any requirement of materiality), replied that the commission had previously discussed and rejected a requirement of materiality with respect to perjury provisions and that the same should be true with respect to tampering with evidence. *Id.* Specifically, he asserted:

> "What we're aiming at is not to give the guy a way out if he engages in forbidden conduct *just because later on some judge might say it was not material.*"

Commission Tape 46, Side 1 (emphasis added); *see also* Commission Minutes at 19.[20]

Those remarks evince differing understandings of "physical evidence." If, as Mr. Chandler asserted (and Senator Yturri implicitly agreed), the gravamen of the tampering prohibition is preserving the integrity of official proceedings, then "physical evidence" should have at least some colorable "evidential" relationship to such a proceeding. Otherwise, the destruction, alteration, or fabrication of the object cannot even plausibly affect the integrity of the proceeding. That is, if something has no connection to a dispute, such conduct cannot actually subvert a goal (in Mr. Chandler's words) of "mak[ing] sure that everything that's necessary to determine the facts of the truth of the matter is available to the court." Conversely, if, as Judge Burns posited, the statute's focus is on punishing conduct intentionally undertaken to subvert official proceedings, regardless of any likelihood that the conduct can, or will, have such an effect, then any "evidential" nexus between the object (aka the "physical evidence") and the proceeding is inapposite: So long as a defendant acting with the requisite *mens rea* alters or destroys *anything*, the defendant is guilty of tampering. Thus, Judge Burns' comments appear, at least in the abstract, to correspond roughly to the "or other thing" formulation, and the Chandler/Yturri comments conform (again in the abstract) roughly to the "or other evidence" formulation.[21]

Notwithstanding that discussion, with its latent inconsistencies, the commission did not modify the definition of "physical evidence" or, as pertinent here, the language of the proposed tampering statute. *See* Commission Minutes at 18-19. Ultimately, that text, as approved by the commission, was included in the enacted 1971 criminal code revisions and, as noted, has remained unchanged.

---

[20] After making that statement, Judge Burns also made a brief, but apparently favorable, allusion to "the discovery statutes'" construct of "anything that contains relevant evidence or anything which is reasonably calculated to lead to the discovery of relevant evidence." Commission Tape 46, Side 1 (remarks of Judge Burns). That brief aside was never developed.

[21] It goes (almost) without saying that no one addressed the "not too hot, not too cold" question of, assuming that there must be *some* "evidential" nexus, how much (or of what sort) is required?

Thus, the statutory history—a history that raises more questions than it answers: Why was "or other evidence" substituted in lieu of "or other thing"? Why didn't that change—which deviated from the consensus definitional standard of other jurisdictions and presented unique challenges of (ostensibly circular) construction and application—occasion at least some explicit comment from, and debate among, commission members? Why did components of the original proposed commentary that comported categorically with the "or other thing" formulation—but which coexist at best awkwardly, if not incompatibly, with an "or other evidence" construct, *see* 277 Or App at 375—remain unchanged after the latter replaced the former?

Ultimately, however—and however inscrutably— "or other evidence" *was* substituted for "or other thing." And, ultimately, the commission approved, and the legislature enacted, that text. We are not free to treat that change as gratuitous or meaningless—for example, simply to deem "or other evidence" to be functionally congruent with "or other thing." *See generally* ORS 174.010. Rather, "other evidence" must be given distinct content. Consistently with the instruction of *Ogle*, and in the absence of compelling evidence of contradicting legislative intent, in this context relating to legal proceedings, "evidence" is "any species of proof or probative matter," that may assist in the determination of a matter of fact in pending or immediately impending official proceedings. 355 Or at 578. Accordingly, "physical evidence" under ORS 162.225(3), and for purposes of ORS 162.295(1)(a) and ORS 162.325(1)(e), must partake of that same quality. That is, to constitute "physical evidence," an "article, object, record, document" or other item of physical substance must have at least some plausible, nonspeculative relationship to a factual matter to be determined in a pending or immediately impending proceeding.[22]

With that understanding, we necessarily reject the state's first alternative contention that defendant's destruction of the electronic device, when coupled with the requisite

---

[22] We fully appreciate, with reference to the concern noted immediately above, *see* 277 Or App at 377 n 21, that that standard is somewhat amorphous. Nevertheless, for reasons expressed immediately below, the circumstances of this case do not demand greater precision, and we defer such refinement.

*mens rea*, was sufficient to establish his guilt for tampering with physical evidence, regardless of whether the device had any connection to the proceedings involving Clark.

We further reject the state's alternative argument that, even if proof that an item is "physical evidence" requires some nexus between the object and a matter to be determined in a pending or immediately impending proceeding, the evidence in this case was legally sufficient to demonstrate the requisite nexus. That argument is unavailing because, as we have concluded, an object is not "physical evidence" unless it has at least a *nonspeculative* relationship to matters to be determined in the predicate proceedings—and here, the state's proof was insufficient, as a matter of law, to establish the requisite nonspeculative nexus between the electronic device that defendant destroyed and the prosecution of Clark.

The state's proposition that the device that defendant found and destroyed was—or even plausibly might have been—the teenage girl's iPod proceeded from a completely unsubstantiated premise, which, in turn, purportedly permitted successive circumstantial inferences. Specifically, the state posits that (1) in May 2011, Clark had thrown the girl's iPod into the ocean, near Wheeler, approximately four to five miles north of Rockaway Beach; (2) the device that defendant found sometime between early September and November was generally similar in appearance to the girl's iPod;[23] and (3) given the difference in time and distance between when and where Clark disposed of the device and when and where defendant found the device, coupled with the general similarity of appearance of the device, a jury could reasonably infer that the device was—or, at least plausibly, might have been—the girl's iPod.

The state's proof of even a plausible nexus was impermissibly speculative because there was *no* substantive evidence of the state's fundamental premise—*viz.*, that Clark had thrown the iPod into the ocean anywhere, at any

---

[23] As noted, *see* 277 Or App at 364 n 4, there was no evidence that the girl's iPod was unique or so unusual in its appearance as to distinguish it from other devices of the same type.

time, much less near Wheeler. As noted, *see* 277 Or App at 363 n 1, the *only* substantive evidence of how or when Clark disposed of the iPod came from Clark himself (the account of running over the iPod and the other devices with his vehicle and then throwing the broken and crushed pieces into "the brush"), which completely contradicts the state's proffered scenario. Regardless of whether the jury credited or disbelieved Clark's testimony, the state's scenario was utterly unsubstantiated.[24] Given that failure of proof, the jury could not find, without engaging in impermissible speculation, that the device that defendant destroyed had any plausible relationship to the proceedings against Clark and, thus, was "physical evidence." *See generally State v. Bivins*, 191 Or App 460, 467, 83 P3d 379 (2004) (observing that "[r]easonable inferences are permissible; speculation and guesswork are not").[25] Accordingly, the trial court erred in denying defendant's MJOA with respect to the charge of tampering with physical evidence, ORS 162.295(1)(a) (Count 2). For the same reasons, the court erred in denying the MJOA with respect to the charge of hindering prosecution in violation of ORS 162.325(1)(e) (Count 1).[26]

One final matter remains: The state contends that, even if the evidence was insufficient to support convictions for the completed crimes of tampering with physical evidence and hindering prosecution, defendant was nevertheless guilty of *attempted* tampering with physical evidence, and *attempted* hindering prosecution, and that we should

---

[24] To be sure, as noted, defendant's coworkers referred to "gossip" and "rumor" and media reports to the effect that Clark may have thrown the iPod into the ocean, *see* 277 Or App at 363, but that testimony, which clearly referred to inadmissible hearsay, was adduced solely as contextual matter to show why they had urged defendant to turn the device over to the police.

[25] Given our determination in that regard, we need not, and do not, address whether, if the state's first premise had been substantiated, the individual secondary circumstantial inferences or the "stacked" collective could have withstood a challenge as impermissibly speculative under *Bivins*'s analysis. *See Bivins*, 191 Or App at 468 ("[E]vidence is insufficient if it requires the stacking of inferences to the point of speculation."). Nor are we required to address the significance, if any, of the prosecutor's remark in opening statements that the device that defendant found and destroyed "probably [was] not the item" that Clark had disposed of.

[26] Whatever additional requirements of proof the "which might aid in" language of subsection (1)(e) might import, it is patent that that provision requires proof of concealment, alteration, or destruction of *"physical evidence."* (Emphasis added.)

remand with instructions to the trial court to enter convictions for those crimes. The state reasons that, in convicting defendant of the completed crimes, the jury necessarily found that defendant, with the requisite mental state, had undertaken "substantial step[s]" towards commission of the completed crimes. *See* ORS 161.405(1).[27] For the following reasons, with particular reference to ORS 161.425, we agree.

Our holding is ultimately predicated on ORS 161.425. That statute provides:

> "In a prosecution for an attempt, it is no defense that it was impossible to commit the crime which was the object of the attempt where the conduct engaged in by the actor would be a crime if the circumstances were as the actor believed them to be."

The commentary to that statute explains that it applies, *inter alia*, to cases of "factual impossibility." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 55 at 53 (July 1970). Thus, a person commits attempted theft "where the actor attempts to steal from the pocket of another when the pocket is empty" and attempted assault (or murder) "where the actor shoots into an empty bed believing it occupied by the intended victim." *Id.*

*State v. Niehuser*, 21 Or App 33, 533 P2d 834 (1975), exemplifies the application of ORS 161.425 to circumstances analogous to those in this case. There, police apprehended burglars who were in possession of stolen property, and one of the burglars disclosed that they had planned to sell those items to the defendant. An undercover officer, posing as a friend of the burglars, contacted the defendant, and the defendant bought the items from the officer (and later sold them to a third person). *Id.* at 35. The defendant was charged with, and convicted of, first-degree theft by receiving, ORS 164.095.

---

[27] ORS 161.405(1) provides that "[a] person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of a crime."

On appeal, the defendant contended that he had been erroneously convicted of theft by receiving, because the items that he had purchased were not "stolen property" in that they had been recovered by the police before he had acquired them. 21 Or App at 35. We agreed, concluding that, "in a theft prosecution based upon a theory of illegally obtaining or receiving the property of another, the state must prove that the property was, in fact, stolen." *Id.* at 37. We then addressed whether the defendant could, nevertheless, "be found guilty of attempted theft[,]" *id.* at 37-38, and concluded that, given ORS 161.425, "the answer is quite simple." *Id.* at 38. That is, given that the defendant, acting from the mistaken belief that the items were stolen, had engaged in conduct that would have constituted theft by receiving if the items had (as the defendant believed) been stolen, the circumstance that the items were not, in fact, stolen property was no defense to culpability for attempted theft. *Id.*[28]

So too here. In this case, the jury, in finding defendant guilty under ORS 162.295(1)(a) and ORS 162.325(1)(e), necessarily found that defendant believed that the electronic device was physical evidence and, acting from that belief, destroyed that device.[29] Just as in *Niehuser,* where the circumstance that the items were not, in fact, stolen property was no defense to culpability for attempt where the defendant acted from the mistaken belief that they were stolen, the same is true here. That is, "if the circumstances were as [defendant] believed them to be"—that is, that the electronic device was physical evidence—"the conduct engaged in by [defendant] would [have been] a crime" under both ORS 162.295(1)(a) and ORS 162.325(1)(e). ORS 161.425. Accordingly, and in accordance with the jury's verdict, defendant committed attempted tampering with physical evidence and attempted hindering prosecution.

Convictions for tampering with physical evidence and hindering prosecution reversed and remanded for

---

[28] In so holding, we noted that "the jury necessarily found that [the] defendant at least engaged in conduct that constituted a substantial step toward receiving stolen property, ORS 161.405, which is required to prove an attempt." 21 Or App at 38.

[29] That finding is necessarily implicit in the jury's determination that defendant destroyed the device with the requisite intent.

entry of convictions for attempted tampering with physical evidence and attempted hindering prosecution, and for resentencing.