*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CF-0391

STEVEN LLOYD WEBB, APPELLANT,

v.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2017-CF3-019596)

(Hon. Robert A. Salerno, Trial Judge)

(Argued November 10, 2022     Decided July 18, 2024)

*Gregory M. Lipper* for appellant.

*Michael E. McGovern*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb*, *Nicholas P. Coleman*, *Kimberly Paschall*, and *Rachel Forman*, Assistant United States Attorneys, were on the brief, for appellee.

Before MCLEESE and HOWARD, *Associate Judges*, and STEADMAN, *Senior Judge*.*

---

 * Associate Judge AliKhan was originally assigned to this case. Following her appointment to the U.S. District Court for the District of Columbia, effective December 12, 2023, Senior Judge Steadman has been assigned to take her place on the panel.

STEADMAN, *Senior Judge*: After assaulting another individual, Steven Webb deleted an inculpatory Instagram post to impair its use in criminal proceedings against him. The trial court convicted him of tampering with physical evidence under D.C. Code § 22-723, and he appeals. Pointing to the statute's language, Webb argues that a digital Instagram post is not "physical evidence." He further argues that even if it were, he did not "tamper" with it. We interpret the statute otherwise and accordingly affirm the conviction.

## I.      Factual Background and Procedural History

In October 2017, Webb arranged to meet another individual named John Sauerhoff and traveled to Sauerhoff's apartment. At some point during their time together, Webb became upset with Sauerhoff and began to hit him. Sauerhoff lost consciousness, and Webb left the apartment. When Sauerhoff regained consciousness, he called 911 and was taken to the hospital.

While Sauerhoff was at the hospital, his roommate, Christopher Janson, located Webb's public Instagram account and, on it, an Instagram post showing Webb's fist stained with blood.[1] Webb had posted the digital photo several hours earlier with the caption, "Got slim blood all on me . . . #NoSuckaShit." (ellipsis in

---

[1] At trial, the parties stipulated that the Instagram account belonged to Webb and that the relevant photo was of him.

original).  Janson took a screenshot of the post, which at the time could be viewed by anyone with an Instagram account, and provided it to Sauerhoff.

The following day, a Metropolitan Police Department officer was assigned to Sauerhoff's case.  Sauerhoff provided the officer with the username for Webb's Instagram account, and the officer searched for and found the same photo.  By then, the post had several comments including one from Webb that "someone tried to spit on me so I beat hi[m]."  The officer took a screenshot of the post and its comments. He then called Webb and identified himself as a police officer, but Webb would not speak with him.  A few minutes later, the officer checked Webb's Instagram account again and the photo and its comments were no longer there.

In 2018, Webb was charged with, and convicted of, assault with significant bodily injury under D.C. Code § 22-404(a)(2) and tampering with physical evidence under D.C. Code § 22-723.  Webb was sentenced to twelve months for assault with significant bodily injury, all of which were suspended except for forty-five days, and a consecutive sentence of six months for tampering, all of which were suspended. Webb timely appealed but challenges only his conviction for tampering with physical evidence.

## II.    Discussion

D.C. Code § 22-723 is entitled "Tampering with physical evidence; penalty" and provides, in relevant part, that:

> A person commits the offense of tampering with physical evidence if, knowing or having reason to believe an official proceeding has begun or knowing that an official proceeding is likely to be instituted, that person alters, destroys, mutilates, conceals, or removes a record, document, or other object, with intent to impair its integrity or its availability for use in the official proceeding.

D.C. Code § 22-723(a).  Webb does not contest that he had reason to know that an official proceeding had begun.  *See Taylor v. United States*, 267 A.3d 1051, 1060 (D.C. 2022) ("[A]n MPD investigation is an official proceeding within the meaning of the tampering statute." (quoting *Mason v. United States*, 170 A.3d 182, 191 (D.C. 2017))).  Nor does he dispute that he intended to impair the Instagram post's availability for use in the official proceeding against him.

Rather, Webb argues that (A) a digital Instagram post is not "physical evidence" as a "record, document, or other object"; and (B) even if his Instagram post fell within the statute's scope, he did not "alter, destroy, mutilate, conceal, or remove" it because the underlying photo remained on Webb's phone and because the government retained a screenshot of the Instagram post.  We consider the

meaning of the statute de novo, *Mason*, 170 A.3d at 190, and address each argument in turn.

## A. "Physical Evidence"

### 1. Whether physical evidence includes digital evidence

Webb argues that the title of the statute and name of the offense, "tampering with physical evidence," place a digital Instagram post beyond the statute's reach. Webb argues that the statute's final terms must be read in conjunction with its introductory phrase, "tampering with *physical* evidence," which he reads as meaning that only hard-copy records and documents, and objects of what might be considered a concrete nature fall within the statute's scope. He thus divides "physical evidence" and digital evidence, excluding the latter from the statute.

However, we think that the statute, properly read, instead distinguishes "physical evidence" from "testimonial evidence." The "plainness or ambiguity of statutory language is determined not only by reference to the language itself, but as well by the specific context in which that language is used, and the broader context of the statute as a whole." *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)) (brackets omitted); *see Velasquez Cardozo v. United States*, 315 A.3d 658, 663 (D.C. 2024) (en banc). We

conclude that "physical evidence" includes digital evidence, given (i) the structure of the broader statutory scheme; (ii) the statute's purpose and legislative history; and, (iii) interpretations of the same language in federal statutes.

### i. The Statutory Scheme

In the Theft and White Collar Crimes Act of 1981, the subchapter "Obstructing Justice" contains three sections: definitions (Section 22-721); prohibited acts (Section 22-722); and tampering with physical evidence (Section 22-723). The prohibited acts section forbids the influence, intimidation, or harassment of individuals who testify in criminal investigations and official proceedings. *See id.* § 22-722. In contrast, the tampering with physical evidence section focuses on protecting evidence that does not come from a person's statements; that is, non-testimonial evidence that might be presented to a fact-finder. *Id.* § 22-723.

This structure indicates that the legislature designed the statutory scheme with two complimentary halves. The first prohibits interfering with the actual people involved in investigations and official proceedings, and the other prohibits tampering with other forms of evidence. When viewed in that light, the term "physical evidence" is best understood as encompassing all non-testimonial evidence—that is, evidence "addressed directly to the senses of the court or jury

without the intervention of the testimony of witnesses, as where various things are exhibited in open court." 23 C.J.S. *Criminal Procedure and Rights of Accused* § 1148 (2024); *see also Pennsylvania v. Muniz*, 496 U.S. 582, 591 (1990) (distinguishing "real or physical evidence" from "testimonial" evidence).

The distinction between testimonial and non-testimonial (physical) evidence is found in other areas of District law. For example, we have referenced "testimonial evidence" and "physical evidence" as two distinct types of evidence that must be suppressed if obtained unlawfully, *Robinson v. United States*, 76 A.3d 329, 342 (D.C. 2013); *see also Hood v. United States*, 268 A.3d 1241, 1246-47 (D.C. 2022), and "physical evidence" in this context includes digital material, *see Gore v. United States*, 145 A.3d 540, 550 (D.C. 2016) (suppressing an officer's body camera video recording when it resulted from an unlawful entry). We have also distinguished "communicative or testimonial evidence" from "real or physical evidence" in defining the scope of the Fifth Amendment's protections. *Brooks v. United States*, 494 A.2d 922, 924 (D.C. 1984). And a defendant can seek to overturn his conviction based on "new evidence" of actual innocence, D.C. Code § 22-4135, and the "new evidence" can be either witness testimony or "physical evidence." *Id.* § 22-4131(7)(B). Although we agree with Webb that different statutes may define the same terms in different ways, the fact that other areas of District of Columbia law understand "physical evidence" to include all non-testimonial evidence such as

digital evidence nevertheless supports the view that the legislature also intended to do that here.

Additionally, several states with similar statutory schemes also understand "physical evidence" to be non-testimonial evidence. *See Pinheiro v. State*, 225 A.3d 495, 501-02 (Md. Ct. Spec. App. 2020) (reasoning that "physical evidence" is interchangeable with "real evidence" and holding that "the overall statutory scheme suggests that physical evidence encompasses evidence *not* testimonial in nature . . . [and] that [body worn camera] footage qualifies as physical evidence" (emphasis in original)); *People v. Rieger*, 436 P.3d 610, 613-14 (Colo. App. 2019) (noting that "'physical evidence' has an established meaning in law, representing the form in which evidence is presented to a fact-finder" and concluding that "electronically stored, digital images . . . qualify as 'physical evidence'"); *State v. Gunnip*, 274 A.3d 1205, 1207-08, 1210-11 (N.H. 2022) (adopting the distinction between "physical evidence" as evidence "addressed directly to the senses of the court or jury" and other evidence that requires "intervention of the testimony of witnesses" (internal citations omitted)); *see also State v. Martine*, 371 P.3d 510, 517 n.15 (Or. Ct. App. 2016) (discussing the drafters' desire to distinguish tampering with witnesses and their testimony from tampering with physical evidence).

### ii. Purpose and Legislative History

The purpose of the District's Theft and White Collar Crimes Act of 1981, which houses Section 22-723, confirms its applicability to digital evidence like an Instagram post. The legislation's committee report indicates that it aimed to address "changes in society which have developed over time" and "[a]dvances in science and technology [that] have . . . made it possible to commit crimes by methods never contemplated at the time the [older] statutes were enacted." D.C. Council, Comm. on Judiciary, Comm. Rep. on Bill No. 4-133, at 4 (June 1, 1982). Part of the Act defined new crimes, including "commercial piracy," which criminalized the unauthorized reproduction or copying of "proprietary information," including "sound recording[s]" for commercial gain. D.C. Council, Extension of Comments on Bill No. 4-133 at 103 (July 20, 1982). As the drafters criminalized heavily digital acts, they endeavored to close legislative gaps in the tampering with evidence statutes. *Id.* at 103 (noting that existing law "does not appear to address the destruction of evidence which may be used in a court proceeding."). It is "highly improbable" that the drafters excluded digital records, documents, and objects in the same statute that criminalized several primarily digital crimes. *See Yates*, 574 U.S. at 546. As Webb himself points out, computers were well known to society by the year 1982. *Timeline of Computer History*, Computer History Museum, https://tinyurl.com/4k3aybn2; https://perma.cc/A4YG-GK3D (*Time* magazine

making its 1982 "Man of the Year" the computer, a "Machine of the Year") (last visited June 18, 2024). It would thus be contrary to the Act's purpose to interpret it as limited only to records that take a concrete, as opposed to digital, form. After all, the statute labels the crime as tampering with physical "evidence."

Although, as Webb argues, the Extension of Comments on the legislation state that the provision "is intended to cover a wide range of tangible articles which may constitute physical evidence," D.C. Council, Extension of Comments on Bill No. 4-133 at 104 (July 20, 1982), we view this provision in the legislative history to indicate that "other object" should be understood broadly and without reference to "record" and "document" under the interpretive rule of *noscitur a sociis*. This understanding is reflected later in the Extension of Comments: "The term 'other object' is not meant to be qualified by the terms 'record or document'. Consequently, the term 'other object' is intended to cover tangible articles, such as weapons or clothes, and not just written or printed articles." *Id.* Therefore, this history can reasonably be read as indicating that "tangible articles," like digital evidence, describes anything that could be tampered with (other than witness testimony), consistent with the legislative purpose discussed above. To be certain, the word "tangible" does not exclude digital or computer evidence when used in this context. *See Yates*, 574 U.S. at 544 (noting that "tangible object" includes "(A) records, documents, or tangible objects that are stored on, or that are, magnetic,

optical, *digital*, other electronic, or other storage mediums or devices; and (B) wire or electronic communications." (quoting U.S. Sentencing Comm'n, Guidelines Manual § 2J1.2, comment, n.1 (Nov. 2014)) (emphasis added)); *see also id.* at 550 (Alito, J., concurring) ("adding 'tangible object' to [the statute at issue] would ensure beyond question that electronic files are included."). Therefore, the legislative history does not mandate that digital evidence be excluded from the statute. Indeed, the word "tangible" never appears in the statutory language itself.

### iii. Analogous Federal Law

Federal law also prohibits tampering with evidence in official proceedings, and "record, document, or other object" includes digital evidence. There are two reasons why the federal statute is useful in interpreting the D.C. tampering with evidence statute.

First, the language of the two statutes is nearly identical, and they were enacted at the same time. The same year that D.C. adopted the tampering with physical evidence statute at issue, Congress adopted a new obstruction of justice statute that used very similar language to criminalize tampering with evidence in the

witness intimidation context.[2]  Specifically, the statute prohibited inducing a person to "withhold testimony, or withhold a record, document, or other object, from an official proceeding" or to "alter, destroy, mutilate, or conceal an object with intent to impair that object's integrity or availability for use in an official proceeding."  18 U.S.C. § 1512(a)(2)(B) (1982).  This language provided the basis of today's 18 U.S.C. § 1512(c), adopted in 2002, which prohibits direct tampering with evidence. *See United States v. Johnson*, 655 F.3d 594, 604 (7th Cir. 2011) (noting that "the phrase 'record, document, or other object' was taken directly from the original statutory text" from 1982).

18 U.S.C. § 1512(c) is nearly identical to D.C.'s tampering with physical evidence statute. *Compare* 18 U.S.C. § 1512(c) (anyone who "alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding" shall be fined) *with* D.C. Code § 22-723 ("A person commits the offense of tampering with physical evidence if . . . that person alters, destroys, mutilates, conceals, or removes a record, document, or other object, with intent to impair its integrity or its availability for use in the official proceeding.").  There is

---

[2]  D.C. Law 4-164 was signed by the mayor on August 4, 1982 and became effective on December 1, 1982.  Likewise, the Victim and Witness Protection Act of 1982, was signed by the president on October 12, 1982, becoming Public Law No. 97-291.

no clear reason to think that the phrase "physical evidence" in the District statute should lead to a different interpretation.

Second, the legislative history of later amendments to the D.C. law indicates that the two statutes should be interpreted together. In 1992, D.C. extended its witness tampering statute by criminalizing intimidating a witness with intent to "[c]ause or induce the person to withhold truthful testimony or a record, document, or other object from an official proceeding." D.C. Law 9-268 § (c)(2)(B) (1992); D.C. Code § 22-722(a)(2)(B). The mayor's office testified that "[t]he amendment generally follows federal law, 18 U.S.C. § 1512 (b)[3] and (c), concerning the use of violence and intimidation to obstruct justice," and "suggest[ed] that, the language of the bill be reviewed in light of the federal statute." Report on Bill No. 9-385 before the Committee on the Judiciary, Council of the District of Columbia, Statement of Vanessa Ruiz, Deputy Corporation Counsel at 1 (April 16, 1992). The "language" referred to in the testimony included the "record, document, or other object" language that is also present in the statute at issue. Therefore, given the close relationship between the language of the relevant D.C. and federal law and this

---

[3] In 1986, the analogous federal witness tampering language was codified at 18 U.S.C. § 1512(b). *See* S. 1236, 99th Cong. § 61 (1986).

legislative history, it is appropriate to look to cases interpreting the federal tampering with evidence statute to interpret the language in D.C. law.

Courts have held that 18 U.S.C. § 1512(c) covers digital evidence. For example, the Fifth Circuit held that the deletion of emails qualifies as a violation of the statute. *United States v. Simpson*, 741 F.3d 539, 551-53 (5th Cir. 2014); *see also, e.g.*, *United States v. Sterling*, 860 F.3d 233, 245-46 (4th Cir. 2017) (deleting emails); *United States v. Davison*, 492 Fed. Appx. 391, 393 (4th Cir. 2012) (deleting images and videos from cell phone and MP3 player); *United States v. Gadsden*, 616 Fed. Appx. 539, 544 (4th Cir. 2015) (deleting email accounts); *United States v. Binday*, 993 F. Supp. 2d 365, 368-69 (S.D.N.Y. 2014) (deleting contents of hard drive). Therefore, the federal statutory scheme reflects the same divided approach: One section of the statute prohibits tampering with witness testimony, and the other prohibits tampering with other forms of evidence, including digital evidence.

\* \* \*

Considering all of the above, we conclude that "physical evidence" means all non-testimonial evidence, and therefore "record, document, or other object" includes digital evidence.

## 2. Whether an Instagram post is a record

We next turn to whether Webb's Instagram post is a "record," as argued by the government. As previously stated, Section 22-723 prohibits tampering with a "record, document, or other object." As relevant here, a "record" is "[a] documentary account of past events, usu[ally] designed to memorialize those events" but is also, more broadly, "[i]nformation that is inscribed on a tangible medium or that, having been stored in an electronic or other medium, is retrievable in perceivable form." *Black's Law Dictionary* (11th ed. 2019). That definition is largely unchanged from the time the statute was drafted. In 1979, three years before the statute's enactment, *Black's Law Dictionary* defined "record," in part, as "transcribed information of any type, whether expressed in ordinary *or machine language.*" *Black's Law Dictionary* (5th ed. 1979) (emphasis added).

We have previously referred to photos posted to an Instagram account as "records." In *Johnson v. United States*, we noted that the police "sent to Instagram a search warrant for its records of [the appellant's] account" and that "the account records produced by Instagram . . . include[ed] video clips, photographs, and textual messages." 290 A.3d 500, 506 (D.C. 2023). These records included "a number of . . . photographs of appellant that had been posted to [appellant]'s Instagram account." *Id.* at 507. We see no reason to treat the present screenshot of the

Instagram post any differently than the Instagram posts produced in *Johnson*, which were essentially PDFs with copies of the photos and a readout of Instagram's underlying data about the post.

Treating the present screenshot of an Instagram post as a "record" aligns with how the term has often encompassed digital materials like photographs, emails, video recordings, and audio recordings. *See, e.g.*, *District of Columbia v. Hudson*, 404 A.2d 175, 177 (D.C. 1979) (including fingerprints and photographs as "record[s]"); *Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1084 (D.C. 2022) (calling an email part of the "documentary record"); *see also, e.g.*, *ACLU v. U.S. Dep't of Def.*, 901 F.3d 125, 126, 133 (2d Cir. 2018) (noting that digital photographs, as records, could be withheld under the Freedom of Information Act); *United States v. Fratus*, 559 F. Supp. 3d 420, 422-23 (E.D. Pa. 2021) (considering a voicemail a "record" of "regularly conducted business activity").

Webb argues that an Instagram post is unlike emails and other digital content because the Instagram post itself is not a standalone object that can be "attached" to an email or text message or seized by the police. We find his argument unpersuasive. The medium by which an Instagram post can be retrieved does not change whether it is a "record"—what matters is that the post is "retrievable in perceivable form," *Black's Law Dictionary* (11th ed. 2019), which an Instagram post clearly is.

In sum, we agree with the government that the Instagram post at issue here falls within the reach of the D.C. Code § 22-723 as a "record."[4]

### 3. Other arguments

With the above understanding of the statute's reach, Webb's remaining arguments may be readily addressed. He claims that, because "record, document, or other object" already excludes testimony, the word "physical" must add additional limits to the list, otherwise it would be "superfluous." We disagree. Here, the addition of the phrase "physical evidence" clarifies the scope of the statute, contrasting its provisions with testimonial actions covered by the preceding subsection. As a result, understanding both the title of the offense and the enumerated list as each excluding testimonial evidence does not render any language superfluous. Furthermore, as a matter of style, including both a title and general characterization of a statute as well as its elements does not result in superfluity.

He also argues that an Instagram post is not like a "gun or ammunition" that can be "whisked from an apartment." Although the statute covers this type of physical evidence, *see Offutt v. United States*, 157 A.3d 191, 194-95 (D.C. 2017), as

---

[4] We might add that we think a persuasive case could be made that the Instagram would fall within the "other object" provision of the statute with its broad scope as discussed above. But we do not need to consider this possibility to sustain the conviction here.

discussed below, digital evidence that never existed in a physical form (unlike, say, an old-fashioned photograph printed from a negative) may similarly be "alter[ed] destroy[ed], mutilate[d], conceal[ed], or remove[d]," D.C. Code § 22-723(a). Because "physical evidence" includes digital evidence, the digital evidence need not have a concrete analogue to be covered.

### B. Tampering

We also conclude that Webb "tampered" with the Instagram post. A person tampers with physical evidence if he "alters, destroys, mutilates, conceals, or removes" the evidence at issue. *Id.* When Webb removed the image and accompanying comments from his Instagram account, he altered and concealed the post's digital profile such that the photo of his fist, the time stamp, and the thread of comments were no longer available to view. Even if that information were still accessible to the server's owners or to software engineers, Webb concealed the post's data such that it was no longer visible to the public, to Webb, or to Webb's Instagram followers.

Neither the screenshots of the post, the fact that Webb retained the photo on his personal cell phone, nor the introduction of the screenshots at trial changes this analysis. A tampering with physical evidence conviction does not require the defendant to be successful in impairing the evidence's use. *See Timberlake v. United*

*States*, 758 A.2d 978, 983 (D.C. 2000) (upholding the conviction after a defendant tried to swallow drugs but failed, eventually spitting them out); *see also People v. Rieger*, 436 P.3d 610, 615 (Colo. App. 2019) ("[e]liminating a copy of a photograph that could have been used at trial impairs the availability of the photograph, even if other copies exist.").

We do not share Webb's concern that this reading of the statute will produce "unfair and absurd results" by allowing—for example—upholding both a shoplifting and a tampering conviction if a person steals a candy bar, eats it, and discards the wrapper. It is crucial that, to be convicted of tampering with physical evidence, an individual must have an intent to stymie what may be used against him at trial. *See* D.C. Code § 22-723(a). "[I]ntent to impair" the evidence's use in a criminal proceeding is the "requirement [that] is the focus of the offense, for it is this element of specific intent which separates innocent acts from [crimes]." D.C. Council, Extension of Comments on Bill No. 4-133, at 104-05 (July 20, 1982); *see also Rieger*, 436 P.3d at 615 ("[a]s recognized by the drafters of a provision in the Model Penal Code similar to ours, the 'limiting factor' of the offense is the requirement of specific intent." (internal quotation marks omitted)); Model Penal Code and Commentaries § 241.7 cmt. 3 (Am. Law. Inst. 1980) ("This designation of specific purpose . . . restricts the scope of the offense to persons who consciously intend to

accomplish the forbidden harm.  Otherwise, destruction of records . . . may betoken nothing more than housekeeping or a desire to protect personal privacy.")

Accordingly, we conclude that Webb altered the Instagram post.

## IV.    Conclusion

In sum, we conclude that (A) "physical evidence" in D.C. Code § 22-723(a) includes digital evidence, and that Webb's Instagram post was a "record, document, or other object"; and (B) that Webb tampered with the record when he deleted the post.  The judgment of the Superior Court is affirmed.

*So ordered.*