# District of Columbia
# Court of Appeals

**No. 15-CM-354**

NYIA GORE,

        Appellant,

   v.

UNITED STATES,

        Appellee.



AUG 18 2016

DISTRICT OF COLUMBIA
COURT OF APPEALS

**DVM-123-12**

On Appeal from the Superior Court of the District of Columbia
Criminal Division

BEFORE: WASHINGTON, *Chief Judge;* GLICKMAN, *Associate Judge*; and PRYOR, *Senior Judge*.

## J U D G M E N T

This case was submitted to the court on the transcript of record and the briefs filed, and without presentation of oral argument. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the appellant's conviction is vacated, and the case is remanded for a new trial.

For the Court:

*Julio A. Castillo*

JULIO A. CASTILLO
Clerk of the Court

Dated: August 18, 2016.

Opinion by Associate Judge Stephen Glickman.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CM-354

NYIA GORE, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 8/18/16
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(DVM-123-12)

(Hon. Zoe E. Bush, Trial Judge)

(Submitted April 7, 2016                                    Decided August 18, 2016)

*Bryan P. MacAvoy* for appellant.

*Channing D. Phillips*, United States Attorney, *Elizabeth Trosman*, *Elizabeth H. Danello*, and *Matthew Evan Kahn*, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, *Chief Judge*, GLICKMAN, *Associate Judge*, and PRYOR, *Senior Judge*.

GLICKMAN, *Associate Judge*:   Nyia Gore appeals her conviction after a bench trial for the misdemeanor offense of malicious destruction of property.  We reverse and remand because the trial court erred in denying appellant's motion to suppress incriminating admissions and physical evidence that police obtained by

entering and searching her home without a warrant. The Fourth Amendment protects "[t]he right of the people to be secure in their . . . houses. . . against unreasonable searches and seizures."[1] Recognizing that "the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed,'"[2] the Supreme Court in *Payton v. New York* held that such intrusions are *per se* unreasonable if the police do not have a search or arrest warrant, unless exigent circumstances justify their failure to secure a warrant. There was no exigency in this case, and we reject the government's argument that the exclusionary rule should not be applied because the police inevitably would have discovered the fruits of their unlawful entry by lawful means.

## I.

On January 17, 2015, Metropolitan Police Officers Christian Tobe and Taylor Collins responded to a call for assistance at a Motel 6 located at 6711 Georgia Avenue, Northwest. The caller, Dwayne Ward, met them in the motel parking lot and requested their help in recovering his personal property from

---

[1] U.S. Const. amend. IV.

[2] *Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)).

appellant, who was residing in a room at the motel with her two children.  Mr. Ward told the officers that appellant had refused to let him back into the room to retrieve his possessions.  He showed the officers a text message from appellant saying she had "trashed [his] shit."

The officers went to appellant's room, knocked on her door, and identified themselves as police officers.  Appellant opened the door but did not come out.  The officers remained in the hallway and spoke to appellant across the threshold.  The ensuing exchange was recorded by a body camera worn by Officer Tobe.  The recording was introduced in evidence at trial.

When appellant opened her door, Officer Tobe greeted her and started to say, "So, uh, I hear you have, uh, some stuff –" when she interrupted him and stated, "I don't have anything.  I trashed everything."  In response to the officers' subsequent questions, appellant said Mr. Ward's possessions were "not in this building" but in a dumpster and she would not go "dumpster diving" to retrieve them.  Appellant became defensive and the colloquy between her and the police grew increasingly heated.  About two minutes into the encounter, the officers told appellant she had committed a crime.  After some additional back-and-forth, Officer Tobe bluntly told appellant they would arrest her unless they could recover

Mr. Ward's property. "Now," he asked her, "does that change your tune any?" Appellant answered, "No it doesn't." Appellant asked whether Mr. Ward was in the hallway, and when the officers indicated he was there, she shouted for him and walked toward the doorway. The officers then entered the room, without appellant's consent, and Officer Tobe handcuffed her. Within fifteen seconds of being handcuffed, appellant finally admitted, "Okay, it's – I'm sorry, but everything is in the tub, and it's – yes, it's destroyed. I tore everything up, I ripped everything up, and I'm sorry. He hurt me."

While Officer Collins remained with appellant, Officer Tobe escorted Mr. Ward into the bathroom to retrieve a trash bag containing his property – a backpack that had been "cut to pieces," papers that had been ripped up, and a radio that had been "smashed." The officers then formally arrested appellant.

Appellant moved to suppress the physical evidence seized from her bathroom and her statements to the police as having been obtained in violation of the Fourth and Fifth Amendments. The motion hearing was incorporated in appellant's bench trial. Officer Tobe testified that in light of appellant's statements and text message, he believed when he and Officer Collins entered appellant's room that they had probable cause to arrest her for destroying or taking Mr. Ward's

property without right. Officer Tobe explained that "we came in the apartment to continue questioning her" about what had happened to the property. In view of appellant's agitated state, he also "wanted to prevent her from getting out in the hallway" and having a confrontation there with Mr. Ward. Officer Tobe further testified that if appellant had not told them where Mr. Ward's property was, "we would have probably searched through the trash cans" and "had we not found [the property] in the dumpsters . . . [w]e could have applied for a search warrant."

In support of her suppression motion, appellant argued that the officers violated her Fourth Amendment rights when, in the absence of exigent circumstances, they entered and searched her home without her consent and without a warrant; and, further, that the officers lacked probable cause to justify their entry. In opposition, the government argued that the officers had probable cause to enter appellant's home and arrest her based on her text message and her initial statement to the police, and also to keep her from coming out of her apartment in her agitated state. The government further argued that the police inevitably would have recovered Mr. Ward's property by lawful means had

appellant not revealed its location to them because they would have applied for a warrant to search her room "once they did not find the items in the dumpster."[3]

Appellant grounded her Fifth Amendment claim on the failure of the officers to give her *Miranda* warnings before questioning her. The government countered that appellant's statements were spontaneous, voluntary, and not the product of custodial interrogation.

The trial court denied the motion essentially for the reasons that the government advanced. It held that appellant's Fifth Amendment rights were not violated because her statements were spontaneous and not in response to custodial interrogation. In addition, the court held, "once the Defendant's says 'I trashed everything, everything is in the tub, I ripped it up,' there's probable cause to arrest her, and the recovery of the items in the bathtub is therefore inevitable, regardless of the fact that there was no consent and no warrant." Thereafter, based on the evidence summarized above,[4] the court also denied appellant's motion for judgment of acquittal and found appellant guilty. It concluded that the government

---

[3] The government also argued that the search of the bathroom was permissible as a search incident to a lawful arrest. This argument is not pursued on appeal.

[4] Appellant did not present any evidence at trial.

had proved beyond a reasonable doubt that appellant had damaged Mr. Ward's property, intentionally and without adequate provocation or excuse, and that the property had some value.

## II.

Appellant contends the trial court erred in not suppressing the evidence seized from her room and her statements to police and, in any event, in finding the government's proof sufficient to convict her of malicious destruction of property. We find merit only in appellant's Fourth Amendment claim. Before addressing that claim, we first dispose of appellant's other contentions.

### A. Sufficiency of the Evidence

The essential elements of misdemeanor malicious destruction of property under D.C. Code § 22-303 (2016 Supp.) are that: (1) the defendant damaged or destroyed, or attempted to damage or destroy, property; (2) the property belonged to another person[5]; (3) the property had some value; (4) the defendant acted

---

[5] This element is satisfied even if the defendant is a co-owner of the property. *See Jackson v. United States*, 819 A.2d 963, 966-67 (D.C. 2003).

voluntarily and on purpose, and not by mistake or accident; (5) the defendant acted with the intent to damage or destroy the property or despite knowing that his or her conduct created a substantial risk of harm to the property; and (6) the defendant acted without justification, excuse, or mitigating circumstances.[6]

"A court must deem the proof of guilt sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[7] The evidence at trial included Mr. Ward's testimony as to his ownership of the backpack and its contents, their condition before and after he left them with appellant, and their value; appellant's admissions in her text message to Ward and recorded statements to the police; and photographs depicting the damaged condition of Ward's possessions when they were recovered from appellant's

---

[6] *See* Criminal Jury Instructions for the District of Columbia, No. 5.400 (5th ed. rev. 2015); *see also Guzman v. United States*, 821 A.2d 895, 898 (D.C. 2003) (defining "malice"); *Brown v. United States*, 584 A.2d 537, 539 (D.C. 1990) (holding that provocation is a proper defense to the charge of malicious destruction of property).

[7] *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); emphasis in the original). For this purpose, we consider *all* the evidence admitted at trial, including the evidence appellant claims should have been excluded, regardless of whether the court erred in admitting it. *See Lockhart v. Nelson*, 488 U.S. 33, 40-41 (1988).

bathroom. Appellant argues that Ward's testimony was "untrustworthy,"[8] but, in actuality, it was amply corroborated in all material respects by the rest of the government's evidence; and, in any event, except in unusual circumstances not present here, we cannot second-guess credibility determinations, which are committed to the trier of fact.[9] We unhesitatingly conclude that the government's proof surpassed the threshold of sufficiency and readily enabled a rational trier of fact to find, beyond a reasonable doubt, that appellant maliciously destroyed property of value belonging to Mr. Ward, in violation of D.C. Code § 22-303.

### B.  Appellant's Statements to the Police

Appellant argues that the trial court should have suppressed her statements to Officers Tobe and Collins because the officers did not advise her of her Fifth Amendment rights against self-incrimination before they subjected her to a

---

[8] Appellant's Br. at 26 (citing Ward's testimony that he had not been drinking beer before the police met him, which appellant considers dubious, and his acknowledgment that his backpack and radio were well-worn even before appellant destroyed them).

[9] *See, e.g.*, *Turner v. United States*, 116 A.3d 894, 927 (D.C. 2015) ("[A] credibility determination, made after the judge had the opportunity to hear the . . . witnesses' live testimony and observe their demeanor, may be overturned only if 'it is wholly unsupported by the evidence.'").

custodial interrogation, as required by *Miranda v. Arizona*.[10]  The government

responds that appellant's initial incriminating admissions that she had "trashed"

Mr. Ward's property, made before the officers entered her room, were not obtained

in violation of *Miranda* because they were not the product of custodial

interrogation.  The government further contends that this court "does not need to

decide when the non-custodial discussion turned into a custodial one" because

"any error in the admission of appellant's subsequent statements [i.e., after the

police entered her room] in which she similarly confessed to trashing the property

would be harmless beyond a reasonable doubt."[11]

---

[10] 384 U.S. 436, 444 (1966) (holding that prior to engaging in custodial interrogation, police must warn a suspect that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.").

[11] Appellee's Br. at 11 n.7 (citing *Lewis v. United States*, 483 A.2d 1125, 1131-32 (D.C. 1984) (holding that admission of statements obtained in violation of *Miranda* was harmless beyond a reasonable doubt where the substance of the statements was introduced through other, untainted testimony)).  As to appellant's statements after the police officers entered her room, the government adds that "[e]ven assuming *arguendo* that appellant's statement as to the location of the property [in her bath tub] violated *Miranda* because a 'custodial interrogation' had been taking place at that time, the *Miranda* violation would not justify suppression of the [physical] evidence because the statement was nonetheless voluntary." *Id.* at 16 n.10 (citing *United States v. Patane*, 542 U.S. 630, 634 (2004) (holding that the Fifth Amendment did not require the suppression of the physical fruits of a *Miranda* violation where the statement was voluntary)).

The *Miranda* warnings are meant to guard against the "danger of coercion [that] results from the *interaction* of custody and official interrogation."[12]  Thus, "[t]he requirements of *Miranda* apply only if custodial interrogation has taken place; there must be both 'custody' and 'interrogation' at the same time."[13]

We agree with the government that there was no *Miranda* violation when the officers merely addressed appellant while they remained in the hall outside her room.  This part of the encounter was what has been called a "knock and talk" interview.[14]  Suffice it to say that appellant was not in police custody during this

---

[12] *Maryland v. Shatzer*, 559 U.S. 98, 112 (2010) (emphasis in original) (quoting *Illinois v. Perkins*, 496 U.S. 292, 297 (1990)).

[13] *Jones v. United States*, 779 A.2d 277, 280 (D.C. 2001) (en banc).

[14] *United States v. Hughes*, 640 F.3d 428, 431 (1st Cir. 2011) ("A 'knock and talk' interview, as the appellation implies, consists of knocking on a person's door, stating the purpose of the visit, and asking the person to agree to an audience."); *see also Kentucky v. King*, 563 U.S. 452, 469-70 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.  And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. . . .  And even if an occupant chooses to open the door and speak with the officers, the occupant need not allow the officers to enter the premises and may refuse to answer any questions at any time.").

interview (at least not until the officers entered her room and handcuffed her).[15]

"Custody," for purposes of triggering the requirement of *Miranda* warnings, "is present when there has been a 'formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'"[16] The question is an objective one; "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.'"[17] Even if, as appellant claims, a reasonable person in her situation would not have felt at liberty to terminate the doorway interview and leave, she mistakes the relevant inquiry. For *Miranda* purposes, we ask not whether a reasonable person would feel free to leave but whether a reasonable person would feel she was under formal arrest or restrained to the degree associated with a formal arrest.[18] Appellant had not been taken from the security

---

[15] We therefore find it unnecessary to decide whether appellant's statements were spontaneous or in response to police interrogation within the meaning of *Miranda*.

[16] *In re I.J.*, 906 A.2d 249, 255 (D.C. 2005) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

[17] *Id.* at 256 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984)).

[18] *See id.* at 256 ("If a reasonable person would have thought he was free to leave, the *Miranda* inquiry is at an end. But if a reasonable person would not have thought himself free to leave, additional analysis is required because . . . not every seizure constitutes custody for purposes of *Miranda*. The ultimate inquiry is[,] was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.") (internal punctuation and citations omitted).

of her home or asked to leave it, nor had the officers (yet) intruded on that security; she was not physically restrained in any way; the officers did not brandish their weapons or otherwise engage in a show of force; and the officers did not tell appellant she was being detained or try to limit her movements.[19]   On these facts of record, we hold that a reasonable person in appellant's position would not have understood herself to be under formal arrest, or under a comparable restraint on her freedom of movement, while the police stood in the hallway and questioned her while she stayed inside her room.[20]

Because this questioning was non-custodial, *Miranda* warnings were not constitutionally required before the police entered the room and placed appellant in handcuffs.  That conclusion leaves in question the admissibility under *Miranda* of appellant's unwarned post-entry statements.  However, we need not address the government's argument that any post-entry *Miranda* violation in eliciting those statements was harmless error (an argument, we pause to note, that implicitly

---

[19] Even when the officers told appellant she had committed a crime by destroying Mr. Ward's property, they made it plain that she was not under arrest.

[20] *See, e.g. Hughes*, 640 F.3d at 435-37 (holding that defendant was not in *Miranda* "custody" during "knock and talk" interview at his residence); *United States v. Titemore*, 437 F.3d 251, 260 (2d Cir. 2006) (same, where state trooper asked defendant to come out onto his porch to talk and questioned him there about vandalism of neighbor's home).

concedes the Fifth Amendment violation[21]), for – as we now turn to discuss – the Fourth Amendment violation in this case entitles appellant to a new trial at which none of the evidence obtained by the police after their warrantless entry of her home will be admissible.

## C. The Warrantless Entry of Appellant's Room

Appellant also claims that the police officers' unconsented entry and search of her home violated her Fourth Amendment rights, both because the police lacked probable cause to believe she had committed a crime, and because there was no showing of exigent circumstances excusing the officers' failure to apply for and secure a warrant. Accordingly, she argues, the evidence obtained inside her home should have been suppressed. The government, defending the trial court's ruling, responds that appellant's admission to having "trashed" Mr. Ward's property furnished the requisite probable cause, and that the evidence found in the warrantless intrusion was properly admitted under the "inevitable discovery" exception to the exclusionary rule.[22]

---

[21] *See Tuckson v. United States*, 77 A.3d 357, 366 (D.C. 2013).

[22] The government does not argue on appeal that the warrantless entry and search of appellant's home was justified by exigent circumstances or that it was

*(continued…)*

We do not doubt that Mr. Ward's report to the police, combined with appellant's text message and her incriminating admission that she had destroyed his property, provided probable cause to believe she had done so unlawfully, and perhaps also that evidence of that offense likely would be found in her room. Even so, in the absence of exigent circumstances, the existence of probable cause does not privilege the police to enter someone's home without a warrant, and we conclude that the "inevitable discovery" doctrine does not apply to the direct and immediate fruits of that Fourth Amendment violation. We therefore agree with appellant that both the physical evidence and the incriminating admissions obtained after Officers Tobe and Collins entered her room should have been suppressed.

"In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.

---

*(continued…)*

consensual. In any event, even if these arguments were preserved, the warrantless entry of appellant's apartment was plainly not consensual, and we cannot deem it justified by exigent circumstances. *See Dorman v. United States*, 435 F.2d 385, 391-93 (D.C. Cir. 1970) (en banc) (noting several factors – absent in this case – establishing sufficient exigency to justify warrantless entry of a home, including whether "a grave offense is involved, particularly one that is a crime of violence," a suspect is "reasonably believed to be armed," and there is "a likelihood that the suspect will escape if not swiftly apprehended").

Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."[23]  The police thus violated appellant's Fourth Amendment rights when, absent exigent circumstances, they made a nonconsensual entry into her home without a warrant.  Both her ensuing admissions and the physical evidence Officer Tobe discovered (Mr. Ward's possessions) were subject to exclusion as the direct and immediate fruits of that constitutional violation.[24]

To avoid application of the exclusionary rule, the government argues only that "even if appellant had not told the officers that Mr. Ward's property was located in her bathroom, they would have inevitably found the property via a search warrant."[25]  The only record support for this assertion is Officer Tobe's testimony that "we would have probably searched through the trash cans [for Mr.

---

[23] *Payton v. New York*, 445 U.S. 573, 590 (1980) (holding that, in the absence of exigent circumstances, the mere existence of probable cause does not justify a nonconsensual entry by police into a home without an arrest or search warrant).

[24] *See, e.g.*, *Kirk v. Louisiana*, 536 U.S. 635, 637-38 (2002) (physical evidence recovered from defendant's person and apartment following warrantless entry is suppressible notwithstanding the existence of probable cause to arrest and search); *New York v. Harris*, 495 U.S. 14, 20 (1990) ("[A] warrantless entry will lead to the suppression of any evidence found, or statements taken, inside the home.").

[25] Appellee's Br. at 15.

Ward's property, and] had we not found it in the dumpsters . . . [w]e could have applied for a search warrant." But testimony that the police "could" have applied for a warrant is insufficient to establish that lawful discovery of the evidence was inevitable.

The inevitable discovery doctrine shields illegally obtained evidence from the exclusionary rule if the government can show, by a preponderance of the evidence, that the evidence "ultimately or inevitably *would* have been discovered by lawful means."[26] "Would" – not "could" or "might" – is the word the Supreme Court used in *Nix v. Williams* and is, therefore, the "constitutional standard."[27] In determining whether discovery was inevitable, the trial court cannot engage in speculation, and must focus exclusively on "demonstrated historical facts capable of ready verification or impeachment."[28] Accordingly, we have said that "the lawful process which would have ended in the inevitable discovery must have

[26] *Hicks v. United States*, 730 A.2d 657, 659 (D.C. 1999) (quoting *Nix v. Williams*, 467 U.S. 431, 444 (1984)). The purpose of the inevitable discovery doctrine "is to ensure that, while the government does not profit from its illegality, 'the prosecution is not put in a worse position simply because of some earlier police error or misconduct.'" *Id.* at 661 (quoting *Nix v. Williams*, 467 U.S. at 443).

[27] Wayne R. LaFave, Search and Seizure § 11.4 (a), at 359-61 (5th ed. 2012).

[28] *Hicks*, 730 A.2d at 659 (quoting *Nix v. Williams*, 467 U.S. at 444 n.5).

commenced before the constitutionally invalid seizure, *and* there must be the requisite actuality that the discovery would have ultimately been made by lawful means."[29]

The requirements of the inevitable discovery doctrine were not met in this case. At the time the police officers illegally entered appellant's room, and even when they seized Mr. Ward's property from her bathroom, the "lawful process"

---

[29] *Id.* at 659 (emphasis in original) (internal punctuation and citations omitted). *See also, e.g.*, *Blair v. United States*, 114 A.3d 960, 969 (D.C. 2015); *McFerguson v. United States*, 770 A.2d 66, 75 (D.C. 2001); *United States v. Redrick*, 48 F. Supp. 3d 91, 107 (D.D.C. 2014) (inevitable discovery doctrine satisfied where "the officers were actively pursuing independent lawful means of searching the apartment [applying for a warrant] before the illegal [warrantless] search occurred"). The inevitable discovery doctrine also has been applied "where the circumstances are such that, pursuant to some standardized procedures or established routine a certain evidence-revealing event would definitely have occurred later." LaFave, § 11.4 (a), at 363-65. This was the situation in *Hicks* itself, in fact. In that case, police stopped a car matching a lookout description on the reasonable suspicion that its occupants had committed a recent robbery. The officers searched the car and found a sawed-off shotgun. Because the search was conducted without probable cause, it was unlawful. This court held the shotgun admissible at trial under the inevitable discovery doctrine, even though the process that inevitably would have resulted in the lawful discovery of the shotgun – a show-up procedure in which the victim of the robbery identified one of the vehicle's occupants as his assailant (providing grounds for a lawful search of the vehicle incident to arrest) – had not commenced until *after* the unlawful search. This did not preclude reliance on the inevitable discovery doctrine, the court reasoned, since there was no doubt that the police were going to arrange the show-up regardless of the unlawful discovery of the shotgun. 730 A.2d at 662. *See also Pinkney v. United States*, 851 A.2d 479, 495 (D.C. 2004).

that supposedly would have ended in the inevitable discovery of that property there – the putative application for a search warrant for the room – had not begun. Indeed, it was never begun; we have only Officer Tobe's statement that he "could" have applied for a warrant in the event a hypothetical search of nearby dumpsters (which itself had not been commenced and was hardly certain to have been performed) was unproductive. Of course, whenever police officers disregard the warrant requirement, they "could" have applied for a warrant instead. But in this case, there is no solid evidence that the officers *would* have done so. "It is, at best, speculative rather than based on 'demonstrated historical facts capable of ready verification'" that the officers *would* have applied for, let alone obtained, a warrant to search appellant's abode.[30] Thus, the "requisite actuality that the discovery would have ultimately been made by lawful means"[31] is entirely lacking here.[32]

---

[30] *United States v. Holmes*, 505 F.3d 1288, 1294 (D.C. Cir. 2007).

[31] *Hicks*, 730 A.2d at 659 (internal quotation marks omitted).

[32] Even if we were to posit that the officers would have applied for and obtained a search warrant had they not entered appellant's home without one, "the argument that '"if we hadn't done it wrong, we would have done it right"' is far from compelling." LaFave § 11.4(a), at 347 (quoting *State v. Topanotes*, 76 P.3d 1159, 1164 (Utah 2003) (quoting *United States v. Thomas*, 955 F.2d 207, 210 (4th Cir. 1992))). "The assertion by police (after an illegal entry and after finding evidence of crime) that the discovery was 'inevitable' because they planned to get a search warrant . . . , would as a practical matter be beyond judicial review. Any other view would tend in actual practice to emasculate the search warrant requirement of the Fourth Amendment." *United States v. Griffin*, 502 F.2d 959,

*(continued…)*

We therefore conclude that all the evidence obtained by the police following their unconstitutional entry into appellant's home – including appellant's statements in the room, the video recording of activity in the room made by Officer Tobe's body camera, and Mr. Ward's property – should have been suppressed and was admitted at appellant's trial in error. The government does not contend that this constitutional error was harmless.

## III.

For the foregoing reasons, we vacate appellant's conviction and remand for a new trial.

---

*(continued…)*
961 (6th Cir. 1974). Here, of course, there is not even an assertion that the officers "planned" to get a warrant; there is only Officer Tobe's statement that he "could" have applied for one. An officer always can apply for a warrant. His failure to do so when he should is a reason to apply the exclusionary rule, not a reason to withhold its application.