*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-538

JAMES N. OFFUTT, APPELLANT,

v.

UNITED STATES, APPELLEE.

FILED 4/6/17
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF2-12011-14)

(Hon. Todd E. Edelman, Trial Judge)

(Argued December 15, 2016                    Decided April 6, 2017)

*Thomas D. Engle*, with whom *Sharon L. Burka* was on the brief, for appellant.

*Valinda Jones*, Assistant United States Attorney, with whom *Channing D. Phillips*, United States Attorney, and *Elizabeth Trosman* and *Chrisellen R. Kolb*, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and FERREN, *Senior Judge*.

MCLEESE, *Associate Judge*: Appellant James Offutt seeks reversal of his conviction for tampering with evidence, arguing that the evidence was insufficient

to support his conviction and that the trial court erroneously allowed him to be cross-examined on an impermissible basis. We affirm.

# I.

The evidence at trial indicated the following. In August of 2013, Mr. Offutt had recently moved into an apartment building at 910 Eastern Avenue, N.E. Dennis Bell had lived in the building for many years. Around 10:30 p.m. on August 12, 2013, Mr. Bell saw Mr. Offutt sitting in front of the building. Mr. Bell thought Mr. Offutt was watching him and might be an informant. Mr. Bell approached Mr. Offutt and asked if he could talk to Mr. Offutt for a minute. Mr. Offutt responded, "[Y]ou don't know me." Mr. Bell replied, "I know I don't know you[,] I just want to talk to you." In response, Mr. Offutt said, "I got something for your ass." Mr. Offutt then went into the apartment building.

Mr. Bell remained outside, and a couple of minutes later he saw Mr. Offutt coming towards him with a handgun. Mr. Bell moved towards Mr. Offutt, grabbed the gun, and shot the gun in Mr. Offutt's direction. Mr. Bell did not know if he hit Mr. Offutt. Mr. Bell discarded the gun behind a parked car and ran away to try to find police officers. From a distance, Mr. Bell saw Mr. Offutt pick up the gun.

An eyewitness flagged down two police officers and reported the incident. The officers drove to the scene of the shooting. As they were searching the scene, Mr. Offutt ran out of a building and told the police that he had been shot. The officers called for an ambulance, which arrived.

Meanwhile, Mr. Bell went to a police station and reported the shooting. Mr. Bell then returned to the scene of the shooting. As Mr. Bell approached police officers on the scene, Mr. Offutt noticed him. Mr. Offutt got out of the ambulance and punched Mr. Bell in the face, saying, "that's the [expletive] who shot me." Mr. Bell was arrested.

Mr. Offutt was taken to Howard Hospital for treatment. There, a detective told Mr. Offutt that the police would be getting a warrant to search Mr. Offutt's apartment. Mr. Offutt was medically discharged at 2:52 a.m. After Mr. Offutt left the hospital, he went to the police station and spoke with Detective Jeffrey Dixon. Mr. Offutt told Detective Dixon that he had gone to his apartment and the police would not let him in. Detective Dixon explained that he was in the process of obtaining a search warrant for Mr. Offutt's apartment and that Mr. Offutt could not go into the apartment until the warrant was executed.

Mr. Offutt lived in apartment 103. Police officers secured the apartment and then guarded the apartment until a search warrant was obtained and executed. At times, only the front of the apartment was guarded, but from sometime between 2:00 and 3:00 a.m. to 6:00 a.m. the back was guarded as well. The officers guarding the apartment did not hear glass breaking and were not aware of anyone entering the apartment.

James Lee lived above Mr. Offutt, in apartment 203. Mr. Lee heard glass shattering late on the night of August 12th. Mr. Lee testified to the grand jury that he then went out on his balcony and saw Mr. Offutt when he looked down. Mr. Lee also testified to the grand jury that he saw Mr. Offutt again in the morning, standing beneath Mr. Offutt's balcony. Mr. Lee's trial testimony was less clear about when and where he saw Mr. Offutt. Mr. Lee had not known Mr. Offutt well at the time of the shooting, but the two had since become friends.

The police executed the search warrant in the afternoon on August 13th. When they entered the apartment, the officers noticed that the large glass door going out to the balcony was shattered. Detective Dixon had been in the apartment when it was first secured, and at that time the glass door was intact. In the back

bedroom, a screwdriver lay next to an access panel on the wall that opened to plumbing access for the bathroom. There was debris on the floor of the access area, and there were marks as though something had been dragged across the surface of the floor. The panel had not been removed when Detective Dixon was securing the apartment.

Mr. Offutt testified at trial. His account of the shooting was that Mr. Bell verbally accosted him, Mr. Offutt eventually lost his temper and used an expletive, Mr. Bell pulled a gun, Mr. Offutt ducked, and Mr. Bell shot Mr. Offutt. Mr. Offutt denied breaking into his apartment. He testified that at the time of the incident he weighed over 300 pounds. He had been in a car accident about a week or two before the incident, injuring his neck and back. He had been told to go to physical therapy for his injuries and he was on leave from his employment until September because of the injuries. He had a plate in his arm that prevented him from doing a pull-up, and he could not have climbed onto the balcony to break into his apartment.

Mr. Offutt did not tell the physicians treating him for the gunshot wound about the car accident or the physical therapy. No physical-therapy records were admitted into evidence.

The jury found Mr. Offutt guilty of simple assault and tampering with evidence but acquitted Mr. Offutt of assault with a dangerous weapon, possession of a firearm during a crime of violence, unlawful possession of a firearm, possession of an unregistered firearm, and unlawful possession of ammunition.

## II.

Mr. Offutt argues that insufficient evidence supported the tampering conviction, because the United States presented no evidence as to what specific object of evidence was tampered with by Mr. Offutt. We conclude that the evidence was sufficient.

In reviewing the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Medley v. United States*, 104 A.3d 115, 127 n.16 (D.C. 2014) (internal quotation marks omitted). "[T]he evidence is sufficient if, after viewing it in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt . . . ." *Smith v. United States*, 55 A.3d 884, 887 (D.C. 2012) (internal quotation marks omitted). "[A]lthough a jury is entitled to draw a vast range of reasonable inferences from evidence, it may not base a verdict on mere speculation." *Schools v. United States*, 84 A.3d 503, 508 (D.C. 2013) (internal quotation marks omitted). "[A]ppellate review of sufficiency of the evidence is [not] toothless," and "[w]e have an obligation to take seriously the requirement that the evidence in a criminal prosecution must be strong enough that a jury behaving rationally really could find it persuasive beyond a reasonable doubt." *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc).

A person is guilty of tampering with physical evidence "if, knowing or having reason to believe an official proceeding has begun or knowing that an official proceeding is likely to be instituted, that person . . . conceals, or removes a[n] . . . object, with intent to impair [the object's] . . . availability for use in the official proceeding." D.C. Code § 22-723 (a) (2016 Supp.). An "official proceeding" is "any trial, hearing, investigation, or other proceeding in a court of the District of Columbia or conducted by . . . an agency or department of the District of Columbia government." D.C. Code § 22-721 (4) (2012 Repl.).

As Mr. Offutt acknowledges, the jury could reasonably have concluded that Mr. Offutt broke into his apartment and removed some object. Mr. Offutt also does not dispute that he knew or had reason to know that an official proceeding had begun or was likely to begin in connection with the shooting. Mr. Offutt argues, however, that there was no evidence of what exactly was taken and that it therefore is unduly speculative that the object was taken to impair the object's use in that proceeding. We disagree. It is true that there was no direct evidence as to precisely what Mr. Offutt took from his apartment. The absence of such direct evidence, however, is not necessarily fatal to a prosecution for tampering with evidence. *See, e.g.*, *State v. Majors*, 318 S.W.3d 850, 859-61 (Tenn. 2010) (Tennessee tampering statute does not require proof of specific item altered, destroyed, or concealed; sufficient evidence to support conviction where police arrived to execute warrant, defendant ran to bathroom, police heard sound of flushing toilet, and defendant emerged from bathroom). In the circumstances of this case, moreover, we conclude that a reasonable juror could have inferred beyond a reasonable doubt that Mr. Offutt acted with the intent to prevent the police from finding something the police could have used in investigating and prosecuting charges arising from the shooting.

The evidence permitted the jury to conclude the following. Mr. Offutt had been shot right outside his apartment building during an altercation. Mr. Offutt knew that the police were investigating the shooting and had obtained a warrant to search Mr. Offutt's apartment for evidence relating to the shooting. Mr. Offutt was told that he could not go into his apartment until the warrant was executed. Nevertheless, Mr. Offutt left the hospital, went to his apartment in the middle of the night, broke in by climbing onto a balcony and shattering a glass door, and removed something that had been hidden in the apartment. Given this sequence of events, the jury could reasonably infer that Mr. Offutt acted out of fear that the police would find something relevant to the shooting, which could include a gun, ammunition, or other evidence tending to indicate that Mr. Offutt had brought the gun to the encounter.

It is possible that in fact Mr. Offutt did not possess anything relevant to the shooting, but instead coincidentally possessed unrelated items that were so incriminating as to cause Mr. Offutt to take the extraordinary steps that he took. The evidence, however, "need not negate every possible inference of innocence to be sufficient. The issue is whether the evidence is probative enough to permit the jury to make the required inference beyond a reasonable doubt." *Brown v. United States*, 146 A.3d 110, 112 (D.C. 2016) (brackets, citation, and internal quotation

marks omitted). Given the absence of evidence that Mr. Offutt possessed any unrelated incriminating objects, and given the close temporal and physical proximity between the shooting and Mr. Offutt's removal of an object from his apartment, the jury acted permissibly in inferring beyond a reasonable doubt that Mr. Offutt was hiding something relevant to the shooting. *See generally Poulnot v. District of Columbia*, 608 A.2d 134, 139 (D.C. 1992) ("Coincidences happen, but an alternative explanation not predicated on happenstance is often the one that has the ring of truth.").

**III.**

Mr. Offutt also argues that the trial court erred by allowing impermissible cross-examination. We conclude that any error was harmless.

In an effort to challenge Mr. Offutt's claim that he could not have climbed onto his balcony because of injuries suffered in a recent car accident, the United States established on cross-examination that Mr. Offutt had not mentioned the accident to the doctors treating him for the gunshot wound and had not told them that he was in physical therapy. After pointing out that Mr. Offutt's attorney had introduced medical records about Mr. Offutt's gunshot wound, the United States

further established that Mr. Offutt's attorney had not introduced any medical records relating to physical therapy for the claimed accident. The trial court overruled Mr. Offutt's objection to that cross-examination.

On appeal, Mr. Offutt argues that this line of cross-examination unfairly undermined his credibility, because the choice as to what evidence to introduce lay solely with his attorney. Assuming without deciding that the cross-examination was impermissible, we conclude that any error was harmless. *See generally, e.g.*, *Smith v. United States*, 26 A.3d 248, 264 (D.C. 2011) ("[I]f . . . the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand . . . .") (quoting *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)). The questioning at issue came immediately after an unchallenged line of questioning had established that Mr. Offutt had not told the physicians treating him for his gunshot wound about the car accident in which he claimed to have been seriously injured a week or two earlier. Moreover, it was accurate that no evidence of medical records relating to the accident was before the jury, and the United States could permissibly point out to the jury the absence of such corroborating evidence. *See, e.g.*, *Harris v. United States*, 602 A.2d 154, 165 (D.C. 1992) (en banc) (prosecutor may permissibly argue absence of evidence corroborating defense testimony). Finally, the United States did not thereafter bring up before

the jury the absence of medical records relating to physical therapy for the claimed accident.  *Cf., e.g.*, *Dancy v. United States*, 745 A.2d 259, 274 (D.C. 2000) ("The fact that the prosecutor did not mention [the disputed evidence] in her opening, closing, or rebuttal statements to the jury further demonstrates their insignificance to the evidence of [the defendant's] guilt.").  Under the circumstances, we conclude that any error in allowing the challenged cross-examination was harmless.

## IV.

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*