*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 17-CF-643

REGINALD W. HOOKS, APPELLANT,

V.

UNITED STATES, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CF2-20784-16)

(Hon. Kimberley S. Knowles, Trial Judge)

(Submitted May 8, 2018                                    Decided August 30, 2018)

*Donald L. Dworsky* was on the brief for appellant.

*Jessie K. Liu*, United States Attorney, and *Elizabeth Trosman*, *Nicholas P. Coleman*, *Chrisellen R. Kolb*, *Jason B. Feldman*, and *Edward G. Burley*, Assistant United States Attorneys, were on the brief for appellee.

Before FISHER, BECKWITH, and MCLEESE, *Associate Judges*.

FISHER, *Associate Judge*:    Appellant Reginald Hooks challenges his convictions for unlawful possession of a firearm ("UPF"), carrying a pistol without a license ("CPWL"), possession of an unregistered firearm ("UF"), and unlawful possession of ammunition ("UA"), claiming the evidence was insufficient. Relying on the recent decision of the District of Columbia Circuit in *Wrenn v.*

*District of Columbia*, 864 F.3d 650 (2017), appellant further challenges his CPWL conviction on the ground that the statute under which he was prosecuted conflicts with the Second Amendment.  We affirm.

## I.  Background

While on patrol during the evening of December 20, 2016, Metropolitan Police Department ("MPD") Officers Vaillancourt, Ashley, and Wright approached a group of four to six people in an alley adjoining the 1500 block of Kenilworth Avenue in Northeast D.C.  When the officers began to approach, Vaillancourt noticed appellant walk away from them and toward a metal dumpster. Vaillancourt saw appellant "standing by the dumpster" when he heard "a loud clang of a metal object hitting another metal object on the side of the dumpster . . . and Mr. Hooks was pulling his arm away from the opening of the dumpster, the slide door there, and then immediately walked away back towards the direction he just came from."  At no point that night did the officers see anyone other than appellant near the dumpster.  Officer Wright then communicated to the other officers by code word that he saw a gun in the dumpster.  Officer Vaillancourt looked "in the dumpster and . . . [saw] the gun[,] without having to move or manipulate anything[,] . . . sitting right on top of the trash."

After passing the dumpster, appellant briskly walked away from the officers. When they pursued, appellant began running. After the officers caught up to and detained appellant, Officer Wright recovered from the dumpster a .357 magnum revolver loaded with six rounds of ammunition. After searching the dumpster, the officers found no other large or heavy metallic object.

At trial, appellant stipulated that he had previously been convicted of a felony, did not have a valid license to carry a pistol at the time of his arrest, and did not have a valid registration certificate as required by law to possess a firearm.

## II. Discussion

### A. There Was Sufficient Evidence to Support Appellant's Convictions

Mr. Hooks argues that the evidence was insufficient to show that he actually possessed the revolver and the ammunition inside it. We disagree and affirm.

When reviewing a claim of insufficient evidence, "we view the evidence in the light most favorable to the government, giving full play to the right of the jury

to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Offutt v. United States*, 157 A.3d 191, 193-94 (D.C. 2017). "The evidence must be sufficiently weighty to allow a finding of guilt beyond a reasonable doubt, but it need not compel such a finding, nor must 'the government negate every possible inference of innocence.'" *Johnson v. United States*, 40 A.3d 1, 14 (D.C. 2012) (quoting *Timberlake v. United States*, 758 A.2d 978, 980 (D.C. 2000)). We reverse only when there is "no evidence upon which a reasonable mind could fairly conclude guilt beyond a reasonable doubt." *Harris v. United States*, 668 A.2d 839, 841 (D.C. 1995).

In light of appellant's stipulations, the only issue contested at trial was whether he possessed the pistol.[1] Regarding his unlawful possession of a firearm conviction, Hooks admitted that he "had [previously] been convicted of a felony." *Dorsey v. United States*, 154 A.3d 106, 112 (D.C. 2017). He also admitted that he

---

[1] Conviction under each of these statutes shares an actual or constructive possession component. *See* D.C. Code § 22-4503 (a) (2016 Supp.) (UPF, "no person shall . . . have a firearm in his or her possession or under his or her control"); D.C. Code § 22-4504 (a) (2016 Supp.) (CPWL, "no person shall carry . . . a pistol, without a license"); D.C. Code § 7-2502.01 (2016 Supp.) (UF, "no person . . . shall possess or control any firearm, unless the person . . . holds a valid registration certificate for the firearm"); D.C. Code § 7-2506.01 (a) (2016 Supp.) (UA, "No person shall possess ammunition . . . unless . . . [h]e is the holder of a valid registration certificate for a firearm").

did not have a valid license to carry a pistol, *see* D.C. Code § 22-4504 (a), and that the pistol "had not been registered as required by law." *See Dorsey*, 154 A.3d at 112. Finally, Hooks stipulated that he did not have "[a] valid registration certificate for a firearm" that would authorize him to possess the cartridges in the revolver. *See* D.C. Code § 7-2506.01 (a). As a result, the only question of sufficiency to be resolved is whether the evidence supported an inference that Hooks actually possessed the pistol when the officers approached him.

The evidence was sufficient to support such an inference. It showed that Hooks walked away from the officers when they approached; that one of the officers heard a loud, metallic noise just before Hooks moved his hand away from the opening in the dumpster; and that the officers recovered a loaded revolver from the dumpster. When the officers pursued appellant, he began running, and they found nothing else in the dumpster that would account for the noise Officer Vaillaincourt had heard. From these facts, the jury inferred that Hooks had actual possession of the revolver prior to his arrest. Contrary to appellant's contention, this inference does not "cross the bounds of permissible inference [and] enter the forbidden territory of conjecture and speculation." Brief for Appellant at 9 (quoting *Rivas v. United States*, 783 A.2d 125, 134 (D.C. 2001) (en banc)).

In fact, we have held that the evidence was sufficient to infer actual possession on facts quite similar to those presented here. *See, e.g.*, *In re A.L.*, 839 A.2d 678, 680 & n.5 (D.C. 2003) (evidence sufficient to infer actual possession of drugs when arresting officer testified he saw juvenile defendant holding shiny object officer believed to be a plastic bag run into stairwell to avoid police officers who later recovered from drainpipe in stairwell a plastic bag containing marijuana); *White v. United States*, 714 A.2d 115 (D.C. 1998). In *White*, an MPD officer recovered a gun from a box in the back of an ice-cream truck. *White*, 714 A.2d at 117. Just after a marked police cruiser pulled in front, an officer saw the defendant move from the front seat of the ice-cream truck to the back, place his hand in the box, and return to the front seat, but he never saw the defendant actually holding the gun. *Id.* On these facts, we held the evidence was sufficient to support a jury inference that the defendant "was in actual possession of the gun— and that he secreted it in the box just as the police arrived." *Id.* at 118-19 (footnote omitted).

The facts here are not just similar to *White*, they yield a stronger inference of actual possession. Unlike in *White*—where the defendant conceivably could have placed something that was not a gun in the box at the back of the truck—the fact here that no other object was recovered that could have made a loud, metallic

clanging sound strengthens the inference that Hooks dropped the gun in the dumpster when he saw the police arrive. As a result, we conclude that the evidence was sufficient to support the jury's inference that Hooks possessed the revolver when the officers arrived.

**B. Appellant's CPWL Conviction Did Not Violate the Second Amendment**

Appellant was convicted of carrying a pistol without a license in violation of D.C. Code § 22-4504 (a), which provided, in relevant part, "[n]o person shall carry within the District of Columbia either openly or concealed on or about their person, a pistol, without a license issued pursuant to District of Columbia law." Relying on the D.C. Circuit's recent decision in *Wrenn*, appellant essentially argues (1) that by holding the District's "good reason" requirement for obtaining a license to carry a pistol unconstitutional, *Wrenn* declared the CPWL statute invalid; and (2) that the CPWL conviction violated his Second Amendment right to carry a pistol outside the home. We reject both challenges.[2]

---

[2] The government invokes the plain error standard of review because these arguments are being raised for the first time on appeal. We need not rely on this doctrine because we find no error.

For present purposes we will assume that *Wrenn* was decided correctly.[3] Even making that assumption, appellant's constitutional challenges to his CPWL conviction fail.

Appellant's first argument, that his conviction was predicated on an invalid statute, is based on a faulty reading of *Wrenn*. That decision did not invalidate the CPWL statute, but merely what it called the District's "'good-reason' law." *Wrenn*, 864 F.3d at 655-56. The *Wrenn* court used this term to refer to an "ensemble" of three sets of text: (1) D.C. Code § 22-4506 (a)-(b) (limiting licenses to those who can show "good reason to fear injury" or "any other proper reason for carrying a pistol"), (2) D.C. Code § 7-2509.11 (1)(A)-(B) (further defining "good reason to fear injury" and "other proper reason for carrying"), and (3) 24 DCMR §§ 2333-34 (2015) (providing various steps an applicant must take to demonstrate

---

[3] This court has consistently held, contrary to *Wrenn*, that "there is no Second Amendment right to carry a concealed firearm in public." *E.g.*, *Gamble v. United States*, 30 A.3d 161, 169 (D.C. 2011); *see also Mack v. United States*, 6 A.3d 1224, 1236 (D.C. 2010) (carrying a dangerous weapon). We are not bound by *Wrenn*, "and the fact that a constitutional issue is presented [here] does not compel us to give greater weight to the circuit court's opinion." *United States v. Simmons*, 302 A.2d 728, 732 (D.C. 1973) (citing *M. A. P. v. Ryan*, 285 A.2d 310 (D.C. 1971)); *see also Chamberlain v. Am. Honda Fin. Corp.*, 931 A.2d 1018, 1025 n.13 (D.C. 2007).

"good reason to fear injury" or "any other proper reason for carrying a pistol"). *Id.* at 655-56.

In its holding, the circuit court instructed the trial courts "to enter permanent injunctions against enforcement of the District's good-reason law." *Id.* at 668. The two District Court orders carrying out this mandate did not broaden the definition of "good-reason law" to include the licensing requirement itself, and did not bar enforcement of § 22-4504. In *Grace*, for example, the court enjoined the District of Columbia "from denying concealed carry licenses to applicants who meet all eligibility requirements other than the requirement that the applicant demonstrate a 'good reason to fear injury to his or her person or property' or 'any other proper reason for carrying a pistol.'" *Grace v. District of Columbia*, Civ. No. 15-2234, 2017 U.S. Dist. LEXIS 171367, at *4 (D.D.C. Oct. 17, 2017); *see also Wrenn v. District of Columbia*, Civ. No. 15-162 (D.D.C. Oct 16, 2017) ("the Court hereby permanently enjoins Defendants from enforcing the District of Columbia's 'good-reason law,' as that term was used by the D.C. Circuit in *Wrenn v. District of Columbia*, 864 F.3d 650, 656 (D.C. Cir. 2017)"). The orders are targeted in this fashion because they encompass only the parts of the District's statutory scheme which the plaintiffs challenged. *See Grace v. District of*

*Columbia*, 187 F. Supp. 3d 124, 129 (D.D.C. 2016); *Wrenn v. District of Columbia*, 167 F. Supp. 3d 86, 91 (D.D.C. 2016).

Any statutory language not encompassed by *Wrenn*'s definition of "good-reason law" remains undisturbed. This is clear, first of all, from the plain language of the *Wrenn* opinion and the trial court orders implementing it. Appellant did not "meet all eligibility requirements other than the [good reason] requirement." *Grace*, 2017 U.S. Dist. LEXIS 171367, at *4. Moreover, D.C. Code § 22-4516 adopts a severability provision to be employed "[i]f any part of this chapter is for any reason declared void." We have recognized that severability statutes embody "'a well-established rule of statutory construction . . . to save and not to destroy legislation.'" *Gamble*, 30 A.3d at 167 (quoting *RDP Dev. Corp. v. District of Columbia*, 645 A.2d 1078, 1082 n.18 (D.C. 1994)). Even without a severability provision, there is always a "presumption of severability whenever the remaining provisions, standing alone, are 'fully operative as a law.'" *See McClough v. United States*, 520 A.2d 285, 289 (D.C. 1987) (quoting *Champlin Refining Co. v. Corp. Comm'n*, 286 U.S. 210, 234 (1932)).

Applying these principles, § 22-4506 now, in effect, reads:

> The Chief of the Metropolitan Police Department . . . may, upon the application of a person having a bona fide residence or place of business within the District of Columbia . . . issue a license to such a person to carry a pistol concealed upon his or her person, if . . . he or she is a suitable person to be so licensed.

On its face, this statute remains operative, including the requirement that a person be "suitable" to qualify for a concealed carry license. 24 DCMR § 2335.1 (a) (2015) also remains operative, providing that to be "a suitable person," an applicant must "meet[] all of the requirements for . . . registering a firearm."[4] As a result, appellant's first argument, challenging, in light of *Wrenn*, the validity of § 22-4504 in total, fails.

Appellant's broader argument, that his conviction for carrying a pistol outside the home without a license was unconstitutional, also lacks merit. The District had not issued Hooks a license to carry a pistol at the time of his arrest. **[Tr. at 92]** Nor could he validly have received a license, because he had

---

[4] These requirements include, among other things, completing a firearms training course and having never been convicted of a felony. D.C. Code § 7-2502.03 (a)(2), (13)(A)-(B).

previously been convicted of a felony.[5]  *See* 24 DCMR § 2335.1 (a) (2015); D.C. Code § 7-2502.03.  *Wrenn* explicitly upheld "'longstanding' regulations that limit the [Second] Amendment's scope, such as bans on possession '*by felons* and the mentally ill.'"  *Wrenn*, 864 F.3d at 657 (emphasis added) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).  Because the District had not issued appellant a license to carry a pistol at the time of his arrest, and he could not have qualified for one as a convicted felon, his conviction falls squarely within the constitutional exceptions the *Wrenn* court (and the Supreme Court in *Heller*) recognized.  *See id.*

### III.  Conclusion

With appellant's challenges to the constitutionality of his CPWL conviction failing under our precedent and under *Wrenn*, and the evidence being sufficient to support all the charges, appellant's convictions for unlawful possession of a firearm, carrying a pistol without a license, possession of an unregistered firearm, and unlawful possession of ammunition are

---

[5]  24 DCMR § 2337.2 (i) (2015) also requires an applicant to declare that he is "not prohibited under federal or District law . . . from possessing a handgun." Appellant could not have done so because, as a convicted felon at the time of his arrest, he was barred from possessing a handgun by 18 U.S.C. § 922 (g) (2012) and D.C. Code § 22-4503 (a).

*Affirmed.*